856 F.2d 102
 12 Fed.R.Serv.3d 796
 Brian MEEHAN; Michael Meehan; Keith Mauldin, Plaintiffs-Appellants,
v.
COUNTY OF LOS ANGELES; Sherman Block; Barbara Edgar;
Three Unknown Officers; Richard Buhler; Harry
Smith; Ronald Merrill; Three Unknown
Sheriffs, Defendants-Appellees.
 No. 86-6508.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 7, 1988.
Decided Sept. 7, 1988.
 
 Rey Ochoa, Commerce, Cal., for plaintiffs-appellants.
 Los Angeles County Counsel, Dennis M. Gonzales, Senior Deputy County Counsel, Richard S. Kemalyan and Clay Robbins, III, Chase, Rotchford, Drukker & Bogust, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before WALLACE, TANG and FARRIS, Circuit Judges.
 TANG, Circuit Judge:
 
 
 1
 Brian Meehan, Michael Meehan, and Keith Mauldin (plaintiffs) appeal the district court's directed verdict in favor of Deputy Sheriff Richard Buhler (Buhler) and the County of Los Angeles (the County). The plaintiffs' complaint sought relief under 42 U.S.C. Sec. 1983 and various state law theories as a result of "raids" on their residence (the Diamond Bar residence) on December 21, 1982, March 10, 1983, and June 29, 1983. On appeal they argue that sufficient evidence existed as to the "deliberate indifference" of Officer Buhler and of a County policy of harassment or nonintervention to withstand motions for directed verdict against their section 1983 claims.
 
 
 2
 The County and Buhler contend that this court's jurisdiction is limited by the notice of appeal to review of Brian Meehan's claim against the County. Fed.R.App.P. 3(c). They argue that the district court properly granted directed verdicts in favor of the County and Buhler because no evidence shows that Buhler was present during any misconduct or had any prior knowledge of alleged misconduct and there is no evidence that the County had an official practice or procedure which facilitated or condoned such misconduct. We affirm.
 
 FACTUAL BACKGROUND
 
 3
 Prior to December 21, 1982, Buhler had been in contact with the three plaintiffs in connection with his investigations of an auto theft and vehicle identification number switching scheme. In September, 1982, Buhler questioned Terry Overlin about an alleged conversation between Overlin and Brian Meehan wherein Brian Meehan offered $20,000 to Overlin to have Buhler killed. According to Overlin, Brian Meehan believed that Buhler was harassing people in the course of his investigations.
 
 
 4
 On December, 21, 1982, at 4:30 a.m., the Los Angeles Police Department [L.A.P.D.] searched the Diamond Bar residence for illegal weapons and narcotics pursuant to a search warrant obtained by L.A.P.D. Officer Edger. Because residents of the house were believed to be armed, the Los Angeles County Sheriff's Special Enforcement Bureau [SEB] assisted in executing the warrant and securing the premises. All three plaintiffs claimed they were physically abused by SEB members. Only Michael Meehan ever visited a doctor; more than three years after the incident, he had visits with a psychiatrist three or four times. Brian Meehan testified that SEB members struck him after stating "Detective Buhler told us you wanted to kill him and this is just a little present from Detective Buhler." Buhler entered the residence after it was secured. According to Brian Meehan, Officer Buhler approached him and said: "Brian, you don't look so good." The search found illegal weapons and cocaine.
 
 
 5
 On March 10, 1983, the Diamond Bar residence was again searched pursuant to a warrant. The warrant was obtained by L.A.P.D. Officer Merrill. The SEB was again called in to secure the premises. Because the occupants failed to respond to a knock and announce, the SEB executed a forced entry; on entry, an individual was seen reaching for a rifle and an SEB agent fired a shotgun into the kitchen ceiling. No one was injured. Michael Meehan was not present during the search. Brian Meehan and Keith Mauldin both claimed they were physically abused by SEB agents. Brian Meehan claimed he was taken to the hospital as a result of being hit over the head. No stitches were received for the injury, nor did he thereafter seek medical care. Once again Buhler entered the premises after it had been secured; he did not strike or abuse any of the occupants. Keith Mauldin was arrested and charged with grand theft auto. The search found illegal weapons and narcotics.
 
 
 6
 On June 29, 1983, two County sheriffs responded to a complaint of a family disturbance at the Diamond Bar residence. Neither Buhler nor any SEB members responded to this call. Of the plaintiffs only Brian Meehan was present. He was questioned and released. Two others who were present were arrested.
 
 PROCEDURAL BACKGROUND
 
 7
 On February 21, 1984, the plaintiffs filed their first amended complaint for damages against the appellees County and Officer Buhler and the City of Los Angeles, Barbara Edger, Harry Smith, Ronald Merrill, three unknown officers, and three unknown sheriffs. The complaint sought recovery under section 1983 and the California Constitution, and under state law for conversion, assault and battery, false arrest, false imprisonment, and intentional infliction of emotional distress. Prior to trial the City of Los Angeles, Harry Smith, and Ronald Merrill were dismissed.
 
 
 8
 The case went to trial on September 2, 1986. During the trial the plaintiffs moved for a mistrial based upon their claim that the defendants had not previously disclosed evidence used to impeach one of the plaintiffs' witnesses. The district court denied the motion. At the conclusion of the plaintiffs' case in chief, Buhler and the County moved for directed verdict as to the section 1983 claims on the ground that the evidence was insufficient to establish a County policy and not sufficient to show Buhler's involvement in the alleged deprivation of any of the plaintiffs' civil rights. The motion was granted as to all claims asserted against Buhler, and as to all claims against the County except those arising from the June 29, 1983, incident. On September 10, 1986, the parties entered into a stipulation by which all causes of action regarding the June 29 incident and all state law claims regarding the December 21 and the March 10 incidents were dismissed with prejudice as to all defendants.
 
 
 9
 The notice of appeal was filed on October 10, 1986. It named "Brian Meehan, et al" as the Appellant and referred only to the district court's failure to grant a mistrial, (which issue was not briefed), and the directed verdict in favor of the County, as the subject matter of the appeal. The plaintiffs argue on appeal that the district court erred in granting the motions for directed verdict in favor of the County and Officer Buhler.DISCUSSION
 
 I.
 Notice of Appeal
 
 10
 The County and Buhler argue that this court has jurisdiction to review only Brian Meehan's claim that the motion for directed verdict in the County's favor was improperly granted. Federal Rule of Appellate Procedure 3(c) states in pertinent part: "The notice of appeal shall specify the party or parties taking the appeal [and] shall designate the judgment, order or part thereof appealed from." Fed.R.App.P. 3(c).
 
 A. Parties to the Appeal
 
 11
 The Supreme Court recently held that a failure to file a notice of appeal in accordance with Rule 3(c)'s requirement that the notice "specify the party or parties taking the appeal" presents a jurisdictional bar to the appeal. Torres v. Oakland Scavenger Company, --- U.S. ----, 108 S.Ct. 2405, 2407-09, 101 L.Ed.2d 285 (1988). See also, Farley Transp. Co. v. Santa Fe Trail Transp. Co., 778 F.2d 1365, 1368-70 (9th Cir.1985) (failure to specify party to the appeal is a jurisdictional bar). The use of "et al." following Brian Meehan's name in the notice of appeal does not sufficiently indicate an intention to appeal by Michael Meehan or Keith Mauldin. As the Court observed in Torres:
 
 
 12
 The purpose of the specificity requirement of Rule 3(c) is to provide notice both to the opposition and to the court of the identity of the appellant or appellants. The use of the phrase "et al.," which literally means "and others," utterly fails to provide such notice to either intended recipient. Permitting such vague designation would leave the appellee and the court unable to determine with certitude whether a losing party not named in the notice of appeal should be bound by an adverse judgment or held liable for costs or sanctions. The specificity requirement of Rule 3(c) is met only by some designation that gives fair notice of the specific individual or entity seeking to appeal.
 
 
 13
 Torres, 108 S.Ct. at 2409. Accordingly, Michael Meehan and Keith Mauldin are not parties to this appeal.
 
 B. Subject Matter of the Appeal
 
 14
 A less technical approach is used under Rule 3(c)'s requirement that the subject matter of the appeal be designated. "We have held that a mistake in designating the judgment appealed from should not bar appeal as long as the intent to appeal a specific judgment can be fairly inferred and the appellee is not prejudiced or misled by the mistake." United States v. One 1977 Mercedes Benz, 708 F.2d 444, 451 (9th Cir.1983), cert. denied, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984).
 
 
 15
 A two-part test is used to determine whether "intent" and "prejudice" are present: "first, whether the affected party had notice of the issue on appeal; and, second, whether the affected party had an opportunity to fully brief the issue." Lynn v. Sheet Metal Workers' Intern. Assoc., 804 F.2d 1472, 1481 (9th Cir.1986), cert. granted, --- U.S. ----, 108 S.Ct. 1219, 99 L.Ed.2d 420 (1988). Here, the notice of appeal designated as the subjects of appeal only the district court's denial of the plaintiffs' motion for mistrial and its grant of directed verdict in favor of the County of Los Angeles. The directed verdict in favor of Buhler is not designated as a subject matter of the appeal.
 
 
 16
 The plaintiffs served "interested parties" with a copy of their brief, in which they attack the district court's grants of directed verdicts in favor of the County and in favor of Buhler.[1] The envelope containing the briefs was addressed to the County Counsel, who, along with the law firm of Chase, Rotchford, Drukker & Bogust, represents both the County and Buhler. Buhler fully briefed the directed verdict issue. Therefore, Buhler had notice of the issue and did not suffer prejudice from the Appellants' failure to include the directed verdict in his favor in their notice of appeal. See Lynn, 804 F.2d at 1481 (where the Local was served with a copy of a brief raising the issue of the grant of summary judgment in favor of the Local, and the Local filed a brief in which the issue was fully discussed, the Local had notice of the issue and was not prejudiced by the appellant's failure to include the issue in his notice of appeal).
 
 
 17
 We hold that Brian Meehan is the sole appellant properly before the court, and that the directed verdicts in favor of the County and Buhler are the proper subjects of the appeal.
 
 II.
 Directed Verdicts
 A. Standard of Review
 
 18
 This court reviews the propriety of a directed verdict de novo. West America Corp. v. Vaughan-Bassett Furniture Co., Inc., 765 F.2d 932, 934 (9th Cir.1985). We must view the evidence in the light most favorable to the nonmoving party and draw all inferences in favor of that party. Blanton v. Mobil Oil Corp., 721 F.2d 1207, 1219 (9th Cir.1983), cert. denied, 471 U.S. 1007, 105 S.Ct. 1874, 85 L.Ed.2d 166 (1985). A directed verdict is proper where the evidence permits only one reasonable conclusion as to the verdict; it is inappropriate if there is substantial evidence to support a verdict for the nonmoving party. Peterson v. Kennedy, 771 F.2d 1244, 1256 (9th Cir.1985), cert. denied, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986).
 
 B. Directed Verdict in favor of Buhler
 
 19
 Brian Meehan argues that proof of Buhler's presence during the "raids" of December 21, 1982, and March 10, 1983, combined with his failure to intervene on Meehan's behalf, is sufficient to withstand a directed verdict. He relies on Byrd v. Brishke, 466 F.2d 6 (7th Cir.1972), for the proposition that damages are recoverable under section 1983 for nonfeasance where there is a duty to act. Byrd was beaten by several unidentified officers. There was testimony that other, identified, officers were aware that Byrd was being beaten but did not intervene. The Seventh Circuit held that the evidence was sufficient to allow the case to go to the jury. The court reasoned that a police officer is under a duty to prevent other officers from summarily punishing a third person. If an officer is aware of such conduct, he must prevent it. 466 F.2d at 11.
 
 
 20
 The directed verdict in this case was granted on the ground that Buhler did not directly engage in the raids. Buhler did not obtain the search warrants. He entered the premises only after they were secured by SEB agents. He is not alleged to have physically abused Brian Meehan or to have destroyed any of his property. Nor is there any evidence that Buhler had any prior knowledge of the alleged illegal activity of the SEB members. Testimony in Byrd indicated that the officers were aware of the illegal conduct. The officers' location near the screaming victim was established. Here Brian Meehan testified that he could be heard screaming and yelling, but Buhler was not present during that time.
 
 
 21
 The only evidence connecting Buhler to alleged misconduct is Brian Meehan's testimony that SEB agents struck him while stating "this is a present from Buhler" and that Buhler later approached him and said "Brian, you don't look so hot." No evidence exists showing that Buhler instructed or authorized that conduct. Absent such evidence, the directed verdict in favor of Buhler was proper.
 
 C. Directed Verdict in favor of the County
 
 22
 A local government may only be held liable under section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037-38, 56 L.Ed.2d 611 (1978). A governmental entity cannot be held liable under section 1983 solely because it has a tortfeasor in its employ; that is, the local government cannot be held liable under section 1983 on a theory of respondeat superior. Id. at 691, 98 S.Ct. at 2036; Guillory v. County of Orange, 731 F.2d 1379, 1381 (9th Cir.1984).
 
 
 23
 Meehan argues that hostile acts prior to the March 10, 1983, raid, and the raid itself, sufficiently establish an unconstitutional policy of harassment or nonintervention. Meehan cites to City of Oklahoma v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), for the proposition that a single incident is sufficient to establish a policy or custom. However, the Tuttle Court concluded that:
 
 
 24
 Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional [local government] policy, which policy can be attributed to a [local government] policymaker.
 
 
 25
 Id. at 823-24, 105 S.Ct. at 2436. Local government liability under section 1983 attaches "where--and only where--a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. Cincinnati, 475 U.S. 469, 483-84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (emphasis added).
 
 
 26
 No evidence supports Meehan's contention that the County had an official policy of harassment or of nonintervention. Proof of unconstitutional assaults by SEB agents on December 21 and March 10, standing alone, does not support a finding of liability against the County. See City of St. Louis v. Praprotnik, --- U.S. ----, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988); Collins v. City of San Diego, 841 F.2d 337, 341-42 (9th Cir.1988).
 
 AFFIRMED.[2]
 
 
 [1]
 The propriety of the district court's refusal to grant the plaintiffs' motion for mistrial is not briefed. That issue is therefore deemed abandoned. Fed.R.App.P. 28(a)(2); Collins v. City of San Diego, 841 F.2d 337, 339 (9th Cir.1988)
 
 
 [2]
 On September 29, 1987, this court issued an order to show cause why $250 in sanctions should not be imposed against counsel for appellants for failure to file a timely civil appeal docketing statement [CADS]. Fed.R.App.P. 46(c). The response to the order to show cause was submitted on October 6, 1987. Rey Ochoa, counsel for the Appellants, asserted that the CADS had been timely filed but, due to a clerical error, under the wrong case number [86-6503 rather than 86-6508]. The Clerk's Office confirms Mr. Ochoa's statement. We therefore waive the imposition of sanctions