879 F.2d 651
 11 Employee Benefits Ca 1919
 Warren JOHNSON, Plaintiff-Appellant,
v.
The TRUSTEES OF the WESTERN CONFERENCE OF TEAMSTERS PENSION
TRUST FUND, Defendants-Appellees.
Thomas E. FARTHING, Plaintiff-Appellant,
v.
The TRUSTEES OF the WESTERN CONFERENCE OF TEAMSTERS PENSION
TRUST FUND, Defendants-Appellees.
 Nos. 87-4347, 87-4355.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 10, 1989.
Decided July 11, 1989.
 
 Hank McCurdy, Dobbins & McCurdy, Portland, Or., for plaintiff-appellant Warren Johnson.
 Bob Whittaker, Lodi, Cal., for plaintiff-appellant Thomas E. Farthing.
 Richard R. Carney and Stephen H. Buckley, Carney, Buckley, Kasameyer & Hays, Portland, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before SCHROEDER, POOLE and NELSON, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 This appeal arises from a claim for refund of payments made on behalf of employees to an ERISA pension trust fund. The plaintiffs below were twenty-two owner/operator truck drivers who drove for Interstate Distributor, Inc. (Interstate). Between 1977 and September 1984, Interstate paid contributions into the Western Conference of Teamsters Pension Trust Fund (Fund) on plaintiffs' behalf. Article 14 of the Trust Fund Agreement provided during that period that "[n]o contribution shall be required or permitted from any plan member [employees] under the plan. All benefits shall be provided solely out of the Trust Fund created by employer contributions." In this litigation plaintiffs contend that the payments made during part of that period were in violation of that provision of the governing trust agreement.
 
 
 2
 Several different collective bargaining agreements were in force between 1977 and 1984. When the later agreements were in force, the pension contributions, although made by Interstate, were shown on the relevant forms as deductions from the employees' gross pay. Plaintiffs demanded refund of the contributions made under those collective bargaining agreements, contending that the employees rather than Interstate had in reality made the pension contributions, in violation of the Trust Fund Agreement provision.
 
 
 3
 After the fund administrator and the trustees of the fund refused plaintiffs' demand for refund of the contributions, the plaintiffs brought suit in district court for refund under the ERISA sections on mistake in contributions, 29 U.S.C. Sec. 1103(c)(2) (1982), and recovery of benefits, 29 U.S.C. Sec. 1132(a)(1)(B) (1982). The district court granted summary judgment against the plaintiffs, ruling that the trust agreement should not be construed as forbidding this particular form of employer contribution. We agree with the trustees' and the district court's construction of the trust agreement and affirm.
 
 FACTS
 
 4
 The facts are not in dispute. Interstate is a Washington corporation that hauls freight throughout the western states. It employs both "regular" drivers and "owner/operator" drivers. The regular drivers operate company-owned rigs, while the owner/operators own the tractors they drive and lease them to Interstate. More than 200 owner/operators worked for Interstate during the relevant period. All drivers were covered by successive collective bargaining agreements. Each of the successive collective bargaining agreements required Interstate to make pension contributions on behalf of the drivers; however, the pension contribution provision changed from agreement to agreement. Under the agreement in force from April 1976 through March 1979, the contributions were not treated as deductions from the drivers' gross pay. Under the agreement in force from April 1979 through January 1981, one-half of the amount of the contributions were shown as deductions. Under the agreement in force after January 1981, all pension contributions were shown as deductions. After September 1984, the Union was decertified and Interstate ceased to make pension contributions on behalf of the owner/operators. The plaintiffs take exception to the latter two agreements, claiming that the deduction mechanism for pension contributions violates the trust agreement.
 
 
 5
 In addition to the collective bargaining agreements, the owner/operators and Interstate entered into individual Transportation Service Agreements (TSAs), which were incorporated by reference into the collective bargaining agreements. The TSAs described the mechanism used in deducting the pension contribution from the owner/operators' gross pay. The TSAs authorized Interstate to "deduct from the [owner/operator's] final settlement of revenues, the current amount charged for the maintenance of a pension fund." The contributions were reflected in a monthly "settlement statement" issued by Interstate to each owner/operator. Interstate forwarded the contributions to the Fund Administrator, Northwest Administrators, Inc. (Northwest). Interstate did not treat the pension contributions as income or expenses. It did not take deductions for them on its tax returns.
 
 
 6
 After the collective bargaining agreements began to provide for deductions for pension contributions, the plaintiffs first applied under the terms of the trust to the Fund for refund of the pension contributions. The Fund had earlier requested an audit from Northwest in response to claims by employees other than the plaintiffs. In response to the plaintiffs' claims, the Fund requested a second audit from Northwest. Both audits concluded that the pension contributions deducted from the owner/operators' pay did not violate the trust agreement. The Fund denied the requests and the plaintiffs appealed to the Benefits Review Committee (BRC), a group of union and management trustees delegated power under the trust to deal with claims for refunds and for benefits. The BRC reviewed the relevant trust provisions and collective bargaining agreements, and concluded that the contributions at issue were not at odds with Article 14's requirement that "[a]ll benefits shall be provided solely out of the Trust Fund created by employer contributions." It affirmed Northwest's conclusion from the first audit that they were "payments on behalf of employees ... made pursuant to a valid collective bargaining agreement and therefore acceptable," and denied the appeal.
 
 
 7
 The plaintiffs then brought this suit in district court under 29 U.S.C. Secs. 1103 & 1132 for refund. The plaintiffs and the defendant Fund trustees submitted the case to the court on the basis of certain depositions, exhibits, and stipulated facts. The district court held in favor of the defendants. It ruled that Article 14 should be construed in light of the economic realities of the arm's-length negotiations between Interstate and the union over the terms of the collective bargaining agreements, terms which included the form of pension contributions for which the employer was responsible. The plaintiffs timely appealed; however, due to a deficiency in their notice of appeal, only plaintiffs Johnson and Farthing are considered appellants before this court.[1]DISCUSSION
 
 
 8
 Where, as here, an ERISA trust instrument vests discretionary power in the trustees to construe and administer the trust's terms, we review the trustees' interpretations of those terms in a 29 U.S.C. Sec. 1132(a)(1)(B) benefits denial suit for abuse of discretion. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. ----, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The trustees abuse their discretion if they render decisions without any explanation, or construe provisions of the plan in a way that clearly conflicts with the plain language of the plan. Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1307 (9th Cir.1986).
 
 
 9
 The plaintiffs contend that the BRC erred in deciding that the contributions made by the employer, while deducted from the owner/operators' pay, were proper payments by the employer on behalf of the employees. They contend that although Interstate formally made the payments to the Fund, its contributions should be regarded as a "sham transaction" because the actual burden fell directly upon the owner/operators. They charge that this effect violated the Article 14 prohibition against contributions from plan members.
 
 
 10
 As the district court recognized, appellants' argument is too simplistic. The court noted that "the [total compensation] package was actively bargained for in successive collective bargaining agreements between management and the union, with the pension deduction presumably more than offset by higher wages." In a collective bargaining situation, almost every bargained-for fringe benefit can be said to impact either directly or indirectly on the wages an employee will receive.
 
 
 11
 The district court correctly concluded that the BRC's Article 14 analysis was proper. Considering the economic realities of collective bargaining, whether the employees received a pension deduction notation on their pay stub or not comes down essentially to a matter of accounting practice. In either situation pension benefits would be "provided solely out of the Trust Fund created by employer contributions" in accordance with Article 14. Article 14 clearly prohibits out-of-pocket payments by employees to the Fund, and is presumably intended to prevent the employer from abdicating its responsibility to make provision for pension contributions on behalf of its employees. Article 14 has not been called into play here, as Interstate has always kept up with its responsibilities of arranging for and making pension contributions. This was done through the collective bargaining process.
 
 
 12
 The BRC in reaching the same conclusion noted that deduction schemes are common practice. This court has dealt with the same accounting practice elsewhere in this industry. See General Teamsters Local 162 v. Mitchell Bros. Truck Lines, 682 F.2d 763, 765 (9th Cir.1982). We conclude that the BRC trustees did not abuse their discretion. The chosen accounting practice bargained for between the employer and the union was not "clearly in conflict with the plain language of the plan." Hancock, 787 F.2d at 1307.
 
 
 13
 The plaintiffs also contend that the fund trustees denied them the proper claims review procedure guaranteed by 29 U.S.C. Sec. 1133 (1982).[2] The district court held that such protections were inapplicable to the plaintiffs' claims because they were not claims for benefits but rather were claims for refund of contributions.
 
 
 14
 We need not decide whether the district court's construction of the scope of section 1133 was correct. We hold that, even assuming that section 1133 covers claims of the type advanced by plaintiffs, the requirements of that statute were met. Northwest provided a reasonable explanation of the reasons for its denial of the claims for refund, rejecting the fully-developed contentions that the plaintiffs had advanced. The plaintiffs were given a full and fair opportunity to present their arguments before the BRC. The principal argument addressed to the administrator and the trustees was not the same one urged in the district court or in this appeal. The primary theory advanced in the administrative proceedings was that the owner/operators were not employees but were independent contractors. The Article 14 issue was secondary. The BRC decision dealt with both issues.
 
 
 15
 That the BRC gave the independent contractor argument more attention than it gave to the pension contributions argument does not mean that plaintiffs were denied a meaningful explanation of the reasons for the denial of their claims. In the first audit report, which like the second report recommended denial of these types of claims, Northwest explained that "in concurrence with the current Labor agreement, pension contributions should be made on the account of each member of the bargaining unit, in this case drivers. This has been the practice of Interstate in regards to both owner/operators and regular employees and according to [Northwest's] audit findings these monies are acceptable." On this basis, Northwest recommended to the BRC that the claims be denied, and the BRC affirmed. The plaintiffs were given Northwest's report and recommendation with which the BRC agreed.
 
 
 16
 The district court's judgment affirming the BRC's denial of contribution refunds is AFFIRMED.
 
 
 
 [1]
 There were actually two notices of appeal. The notice of appeal in No. 87-4355 identifies Thomas E. Farthing as the appellant. The notice in No. 87-4347 lists as the appellants, "Warren Johnson, et al." This is unacceptable. The use of the phrase "et al." to identify the appellants in a notice of appeal does not comply with the specificity requirements of Fed.R.App.P. 3(c). Torres v. Oakland Scavenger Co., --- U.S. ----, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988). Although the notices of appeal in this case were filed before the Torres decision was handed down, this circuit applies the Torres rule retroactively. See Meehan v. County of Los Angeles, 856 F.2d 102, 105 (9th Cir.1988). Accordingly, the jurisdiction of this appeal reaches only plaintiffs Johnson and Farthing. See id. at 106
 
 
 [2]
 Section 1133 provides in full:
 In accordance with regulations of the Secretary [codified at 29 C.F.R. Sec. 2560 (1988) ], every employee benefit plan shall--
 (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
 (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.