990 F.2d 1260
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Walter SHEMERDIAK, Plaintiff-Appellant,
v.
UNITED FOOD AND COMMERCIAL WORKERS UNION, et al.,
Defendants-Appellees.
 No. 92-16523.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 7, 1993.*
Decided April 16, 1993.
 
 Before BROWNING, KOZINSKI and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Walter Shemerdiak appeals pro se the district court's summary judgment in favor of defendant United Food and Commercial Workers International Union-Industry Pension Fund (National Fund) in his action under the Employee Retirement Income Security Act of 1974 (ERISA). Shemerdiak contends that the district court erred by finding that he was not entitled to disability or pension benefits through the Union's pension plan. He also contends that the district court erred by failing to require the National Fund to provide him with certain documentary information he claims he is entitled to under ERISA. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 We review de novo the district court's summary judgment. Alaska Airlines, Inc. v. United Airlines, Inc., 948 F.2d 536, 539 (9th Cir.1991), cert. denied, 112 S.Ct. 1603 (1992). Summary judgment is appropriate if the moving party presents evidence that shows that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting significant probative evidence tending to support its claim that material, triable issues of fact remain. Id.
 
 
 4
 A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is reviewed under an arbitrary and capricious standard of review, where the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Madden v. ITT Long Term Disability Plan for Salaried Employees, 914 F.2d 1279, 1283 (9th Cir.1990) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)), cert. denied, 111 S.Ct. 964 (1991). An administrator's interpretation will be found to be arbitrary and capricious only if it clearly conflicts with the plain language of the plan. See Johnson v. Trustees of Western Conference of Teamsters Pension Trust Fund, 879 F.2d 651, 654 (9th Cir.1989).
 
 
 5
 Shemerdiak contends that the district court erred by finding that he was not entitled to pension benefits under the National Fund's pension plan. The district court found that he did not have enough pension credits to qualify for the benefits.
 
 
 6
 The National Fund is a jointly trusteed, multiemployer pension plan as defined in 29 U.S.C. §§ 1102(2) and (37). The National Fund's trustees review a participant's eligibility for benefits under the plan rules in effect when the participant leaves employment covered by the National Fund ("Covered Employment").[1]
 
 
 7
 The National Fund's plan document in effect when Shemerdiak left "Covered Employment" in 1967 required that participants earn at least ten years of pension credit in order to be entitled to any National Fund benefits. Under the plan document, a participant could earn two types of pension credit. His total pension credit was calculated by adding "Past Service Pension Credit" and "Future Service Pension Credit."
 
 
 8
 In order to earn "Past Service Pension Credit," a participant must have been employed in "Covered Employment" during nine of the twelve months immediately preceding the contribution date of his employer. "Future Service Pension Credit" is earned by working in "Covered Employment" and is calculated from the employee's contribution date.
 
 
 9
 The National Fund's records indicate that Shemerdiak's employers for the twelve months preceding his contribution date did not contribute to the National Fund. Shemerdiak's contribution date is March 1966, the time he began employment with an employer who contributed to the National Fund on his behalf. Between March 1966 and August 1967 Shemerdiak was employed in "Covered Employment" and earned one year and five months of "Future Service Pension Credit." Shemerdiak has not been employed by employers who participated in the National Fund since August 1967.
 
 
 10
 When Shemerdiak applied for a normal pension benefit and a disability pension benefit from the National Fund on January 21, 1991, the National Fund's records indicated that he had a total of one year and five months of pension credit. Because Shemerdiak did not earn the requisite ten years of pension credit, the National Fund's trustees denied his benefit application. The Fund's trustees also found that Shemerdiak was not eligible for a disability pension because he was not in "Covered Employment" when he became disabled as required by plan rules. The trustees' decision was based on a reasonable interpretation of the applicable plan's terms, and therefore was not arbitrary and capricious. See Johnson, 879 F.2d at 654.
 
 
 11
 Furthermore, Shemerdiak has not offered any evidence to dispute the National Fund's records or the affidavits of National Fund officials. Instead Shemerdiak offers erroneous calculations of his pension credit.[2] Therefore, the district court did not err by granting summary judgment in favor of the defendants. See Anderson, 477 U.S. at 250.
 
 
 12
 Shemerdiak next contends that the district court erred by failing to compel the National Fund to produce certain documents regarding his coverage. Specifically, he claims that the National Fund should be fined under ERISA § 502(c)(1) for its failure to provide him with a copy of the "Instrument of Merger of Meatcutters Pension Fund."[3]
 
 
 13
 ERISA § 104(b)(4) provides that the administrator of an employee benefit plan "shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4).
 
 
 14
 On August 6, 1991, the National Fund received a letter from Shemerdiak dated July 1, 1991 requesting a copy of the National Fund's prior or old plan. On August 15, 1991, the National Fund furnished him with a Plan document that pertained to his service prior to enactment of ERISA in 1974. On July 29, 1991, Shemerdiak sent another letter to the National Fund requesting copies of "all laws and by-laws applicable to applications for disability benefits prior to April 1976" and an "entire copy" of his pension fund file.
 
 
 15
 On August 15, 1991, Shemerdiak sent yet another letter to the National Fund requesting a copy of the "laws and by-laws, rules and regulations, in force and governing operations of the Union-Industry Pension Plan, prior to April 1976," a copy of the prior, old or frozen plan, the entire copy of his files in the custody of the Board of Trustees, a list of "disability benefits beneficiaries, dead or alive," receiving benefits from the National Fund and a bill for copying that information. On August 28, 1991, the National Fund responded by sending Shemerdiak a letter summarizing the information contained in his National Fund files.
 
 
 16
 Shemerdiak never requested a copy of a document entitled "Instrument of Merger of Meatcutters Pension Fund" in writing from the administrator. The merger agreement he refers to occurred in 1970, three years after Shemerdiak left "Covered Employment." Therefore, the merger agreement would not constitute an instrument under which the National Fund was established or operated with respect to Shemerdiak. See 29 U.S.C. § 1024(b)(4).
 
 
 17
 Furthermore, of the documents requested by Shemerdiak in his letters to the National Fund, the only one which qualifies as an instrument under which the National Fund was established or operated, is the Plan document. The National Fund furnished this document nine days after the request was received. Hence, the National Fund has met its obligation under section 104(b)(1) of ERISA, and is not liable for the fine established by section 502(c)(1) of ERISA.
 
 
 18
 Therefore, the district court did not err by not requiring the National Fund to furnish additional documentation.
 
 
 19
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, appellant's request for oral argument is denied
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 "Covered Employment" is defined by the Plan as employment for which an Employer is obligated to contribute to the Pension Fund subsequent to the "Contribution Date."
 "Contribution Date" is defined as the first date for which an Employer is obligated by a collective bargaining agreement to make contributions to the Pension Fund on behalf of a covered employee.
 
 
 [2]
 Shemerdiak claims that he has earned 22.0333 years of pension credit under the National Fund. This contention is meritless. His claim is based upon time spent as a member of the United Food and Commercial Worker's Union-Meatcutters Local 421 (UFCWU). Shemerdiak erroneously equates the time spent as a member of UFCWU with time spent participating in the National Fund. The UFCWU and the National Fund are separate entities
 The National Fund only grants pension credit to a UFCWU member for service with an employer that was obligated to contribute to the National Fund. Only one of Shemerdiak's employers was so obligated between March 1966 and the present, resulting in an accrual of one year and five months pension credit between March 1966 and August 1967.
 Shemerdiak also claims that 7.8333 years of service earned with the Southern California Fund should be counted under the National Fund. This contention is also without merit. The National Fund has no reciprocity agreement with the Southern California Fund which would allow service under either plan to be counted under both plans for pension credit purposes. Therefore, his service under the Southern California Fund does not count toward his pension credits for benefits under the National Fund.
 
 
 [3]
 ERISA § 502(c)(1) provides that the court may impose a fine of up to $100 per day on a plan administrator who fails or refuses to comply within 30 days with a request for any information which the administrator is required to furnish under ERISA. 29 U.S.C. § 1132(c)(1)