15 F.3d 1087
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 MODERN EXPLORATION DEVELOPMENT AND MINING, INC., a Montana
corporation; Zook Brothers Construction Company,
a Montana corporation,
Plaintiffs-Appellants/Cross-Appellees,
v.
Everett E. BERG, an individual; Berg Family Revocable
Trust, by & thru its Trustees, Everett E. Berg & Ruth A.
Berg; Christopher H. Berg Irrevocable Trust and Anne K.
Berg Irrevocable Trust, by and thru their Trustees, Everett
E. Berg, Christopher H. Berg & Paul M. Ginsburg, which do
business under the name and style of Falcon Exploration;
Berg Family Revocable Trust, by and thru its Trustees,
Everett E. Berg and Ruth A. Berg, which does business under
the name and style of Ebco Enterprises,
Defendants-Appellees/Cross-Appellants.
STATE of NEVADA, ex rel NEVADA STATE CONTRACTORS BOARD, Amicus.
 No. 92-15173.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1993.
Decided Dec. 7, 1993.
 
 Before: HUG, FARRIS, and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. OVERVIEW
 
 2
 This is an action by Modern Exploration and Development Company ("Modern") challenging the district court's grant of judgment notwithstanding the verdict. The jury found that defendant Everett E. Berg, et al., ("Berg") breached its one-year contract with Modern, and awarded damages in the amount of $2,624,742. Upon a motion by Berg, the district court granted a judgment notwithstanding the verdict ("JNOV") on the basis that the parties' contract exceeded one year; therefore, the statute of frauds applied and the parties should have been prevented from proving the terms of the contract. Berg cross-appealed the district court's grant of a new trial limited to damages only.
 
 II. BACKGROUND
 
 3
 In June, 1981, Modern and Berg entered an agreement in Montana regarding two Berg mining enterprises in Esmerelda County, Nevada. This agreement was memorialized by a Letter of Intent, which identified the prices Modern would charge Berg for each ton of material drilled, blasted, hauled or crushed, and quoted prices for maintaining the haul road and mobilizing equipment. The Letter of Intent also provided that work at the Tonopah Divide Mine was "to start immediately," and work on the Boss Mine was to "start as directed by the owner."
 
 
 4
 After 102 days of operation, work at the projects ceased. Consequently, Modern filed suit in Montana state court seeking over $4 million in damages. The action was removed to federal district court on the basis of diversity of citizenship, and ultimately transferred to federal district court in Nevada. Although the court ruled that the Letter of Intent did not satisfy the statute of frauds, the court permitted Modern to proceed to trial on claims of a one-year contract and a terminable-upon-reasonable-notice contract. The court instructed the jury that the existence of a contract, and the duration of the contract, were questions of fact to be resolved by the jury.
 
 
 5
 The jury determined that a one-year contract existed, and that it was breached by Berg. The jury returned a verdict in Modern's favor and awarded damages in the amount of $2,624,742. Upon a motion by Berg, the court awarded a JNOV. The court concluded that although the contract required Modern to perform services for only one year, it was unenforceable because it was to commence more than one day beyond the time the parties entered the agreement. The court also conditionally granted Berg's motion for a new trial, but limited the new trial to the issue of damages. Modern appealed the grant of the JNOV; Berg cross-appealed the district court's decision to limit the new trial to the issue of damages only.
 
 III. DISCUSSION
 
 6
 In granting a JNOV for Berg, the district court concluded, as a matter of law, that the alleged oral contract between the parties could not be performed within a year of making and, therefore, it was violative of the statute of frauds. The standard of review of a grant of motion for JNOV is de novo. Meehan v. County of Los Angeles, 856 F.2d 102, 106 (9th Cir.1988). "A directed verdict is proper where the evidence permits only one reasonable conclusion as to the verdict; it is inappropriate if there is substantial evidence to support a verdict for the nonmoving party." Id.
 
 
 7
 The dispute in this case involves whether the oral contract, as alleged by Modern, was to be performed within a year of its making and, therefore, not subject to the writing requirement of the statute of frauds. Modern asserts that the contract obligated Modern to mobilize equipment to Nevada and to perform various jobs at the mine site for one year. Modern further asserts that because this one-year contract was to be performed immediately, it falls within the one-year exception to the statute of frauds. Berg's contention is that although this contract was essentially a one-year contract, it was required to be in writing because performance was not to take effect until after the mobilization of the equipment from Montana to Nevada.
 
 
 8
 The parties agree that Montana law governs this case. The Montana statute of frauds provides as follows:
 
 
 9
 The following agreements are invalid unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged or his agent:
 
 
 10
 (a) an agreement that by its terms is not to be performed within a year from the making thereof; ....
 
 
 11
 Mont.Code Ann. Sec. 28-2-903. Generally, the one-year provision of the statute of frauds is to be narrowly construed. The Montana Supreme Court explained its position on this issue:
 
 
 12
 The statute provides that an agreement that by its terms is not to be performed within a year from the making thereof must be in writing.
 
 
 13
 However, courts have uniformly construed this provision [the one-year provision of the statute of frauds] narrowly. If there is any possibility that a contract may be performed within one year, it is not within the statute.
 
 
 14
 Beaverhead Bar Supply, Inc. v. Harrington, 805 P.2d 560, 563 (Mont.1991) (internal citations omitted). Modern asserts that given the Montana Supreme Court's distaste for applying the statute of frauds when there is any possibility that the contract can be completely performed within a year, the district court improperly applied the statute of frauds in this case. We agree.
 
 
 15
 We find that there was substantial evidence to support the jury's verdict. The evidence presented at trial established that Modern was at the mining site, with equipment, the day the agreement was signed. The evidence further showed that Modern commenced work on the road construction immediately. Moreover, the Letter of Intent reflects that the parties intended a one-year agreement. The document clearly identifies the various types of work to be performed by the parties: drilling, loading and hauling ore, crushing ore, maintaining haul road, loading and hauling waste and mobilizing equipment. At the bottom of the document, the following appears: "Prices apply for one year." We conclude that because the work was to begin immediately, and the agreement was limited to one year, the contract was valid under the statute of frauds.
 
 
 16
 We reject Berg's contention that the one-year price limitation applies to mining work only, specifically crushing, loading and hauling of ore. First, the Letter of Intent does not specifically contemplate an agreement to mine, but rather creates an agreement for "mining" as well as maintenance of the roads and the mobilization of equipment. Second, the language in the Letter of Intent limiting prices to one year only does not in any way suggest that the prices for crushing, loading and hauling ore are to be treated differently from prices for maintaining the haul road, mobilizing equipment and hauling waste. Therefore, to assume that the one-year price provision applies to "mining work" only, but not to maintaining the road and mobilizing equipment is contrary to the face of the document.
 
 
 17
 Moreover, we disagree that the testimony presented at trial establishes that the parties intended a one-year-plus-mobilization contract. Specifically, Berg asserts that Modern's Vice President testified that the Letter of Intent represented a contract to mine for one year. Our review of the evidence compels a conclusion that Berg places too much reliance on a narrow definition of the word "mining." A broader and more logical definition that includes all work under the agreement is an interpretation that the jury reasonably could have found.
 
 
 18
 We have carefully reviewed the record and hold that there was substantial evidence presented at trial to support the jury's verdict. Although there was considerable contradictory and impeaching evidence presented, this issue was submitted to the jury under appropriate instructions, and the jury concluded that the contract could be performed within one year. Therefore, because the district court is not permitted to reweigh the evidence to reach a result that it finds more reasonable than the result reached by the jury, the district court's grant of JNOV was improper. The jury's verdict must be reinstated. Airweld, Inc. v. Airco, Inc., 742 F.2d 1184, 1188 (9th Cir.1984), cert. denied, 469 U.S. 1213 (1985).
 
 
 19
 We also conclude that Modern's failure to comply timely with the Nevada contractor's license statute, NRS Sec. 624.320, does not bar Modern from suing on these claims. We agree with the district court's thorough analysis of the issue and its conclusion that the principles enunciated in MGM Grand Hotel, Inc. v. Imperial Glass Co., 533 F.2d 486 (9th Cir.), cert. denied, 429 U.S. 887 (1976), control this case. In MGM Grand, we looked to the public policy of the licensing statute and determined that because the contractor had substantially complied with the statute, those objectives had been met. Id. at 489-90. We agree that Modern's pursuit of a license and the ultimate issuance thereof reflect that Modern substantially complied with the Nevada licensing requirements. The fact that Modern was ultimately issued a license is further evidence that the policy objectives of the statute concerning competence and responsibility were achieved. Nevada Equities, Inc. v. Willard Pease Drilling Co., 440 P.2d 122, 123 (Nev.1968).
 
 
 20
 Moreover, we agree that the equities of the case required that Modern be given an opportunity to prove its claims. The evidence established that the parties had previously contracted for work in Montana and that Berg induced Modern to bid on the contracts for the Tonopah mines. Further, it is clear that Berg did not rely on any mistaken belief that Modern had obtained the necessary contractor's license. Therefore, the district court's denial of the defendant's motion for summary judgment was proper.
 
 
 21
 The district court did not err in refusing to apply judicial estoppel to bar Modern from suing on a one-year contract. Contrary to Berg's assertions, Modern's inconsistent statements regarding the duration of the contract do not reflect opportunistic legal maneuvering. Rather, Modern's seemingly inconsistent testimony resulted from an imprecise definition of the term multi-year contract. Moreover, any perceived inconsistencies were explained to the satisfaction of the jury. The facts presented do not warrant application of judicial estoppel.
 
 
 22
 Consistent with the district court's order, we remand for a new trial on the amount of damages. We reject Berg's argument that the new trial must also address the issue of liability because the jury's damage award was inconsistent with the jury's findings. While Berg correctly asserts that a new trial must be granted if answers to special interrogatories are inconsistent with the general verdict, a court is generally required to reconcile inconsistent findings in an effort to sustain the jury's verdict. United Air Lines, Inc. v. Wiener, 335 F.2d 379, 407 (9th Cir.), cert. dismissed, 379 U.S. 951 (1964). "Answers to special interrogatories do not present a square conflict with the general verdict where such answers do not exhaust all of the possible grounds on which the finding implicit in the general verdict may have been based." Id. Although the jury found that Berg did not specifically promise that Modern could mine 2,000 tons a day, that determination is not wholly inconsistent with the damages awarded because there was evidence that Modern could have mined more than 2,000 tons a day. The district court's conditional grant of a new trial on the issue of damages is affirmed.
 
 
 23
 REVERSED IN PART and AFFIRMED IN PART. Remanded for a new trial on the issue of damages and such other proceedings consistent with this disposition.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3