903 F.Supp. 1338 (1995)
Don BIRDSELL, Plaintiff,
v.
UNITED PARCEL SERVICE OF AMERICA, INC., UPS Health and Welfare Plan, and Aetna Life and Casualty Company, Defendants.
No. 4:94CV01592 GFG.
United States District Court, E.D. Missouri, Eastern Division.
October 19, 1995.
*1339 *1340 *1341 Susan H. Mello, St. Louis, MO, for Don Birdsell.
David W. Welch, Lashly and Baer, St. Louis, MO, for United Parcel Service of America Inc., UPS Health and Welfare Plan.
Quentin L. Brown, Peter F. Travis, John C. Cowden, Patricia A. Sexton, Baker and Sterchi, Kansas City, MO, for Aetna Life & Casualty, Inc.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on defendants' motions for summary judgment.
Plaintiff filed suit against his employer, United Parcel Service of America, Inc. and UPS Health and Welfare Plan (collectively "UPS"), and Aetna Life and Casualty Company (Aetna) pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. As an employee of UPS, plaintiff is a participant in the UPS Health and Welfare Plan (the "Plan"). Aetna manages the day to day operations of that Plan for UPS as a claim administrator.
In Count I, plaintiff alleges that defendants violated ERISA by arbitrarily and capriciously denying his claim for dental implants and related benefits. In support of his claim, plaintiff alleges that defendants failed to provide him with information in a timely manner and charged excessive copying fees for certain documentation. Count I seeks monetary relief while Count II incorporates the allegations of Count I but seeks equitable relief including the removal of defendants as the Plan's fiduciaries. Count III *1342 seeks statutory damages pursuant to 29 U.S.C. § 1132(c)(1) in the amount of $100 per day for defendants' refusal to provide information and documents within thirty (30) days of plaintiff's request and defendants' demand for an excessive copying charge. Defendants have moved for summary judgment on all claims.

I. Standard of Review
Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir.1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and his entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); Fed.R.Civ.P. 56(c).
Once the moving party has met his burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Anderson, 477 U.S. at 257, 106 S.Ct. at 2514-15; City of Mt. Pleasant v. Associated Elec. Coop., Inc., 838 F.2d 268, 273-74 (8th Cir. 1988). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
The UPS Plan in this case is an "employee welfare benefit plan" within the meaning of ERISA. 29 U.S.C. § 1002(1). ERISA allows those who participate in such a plan to challenge the denial of a claim in federal court. 29 U.S.C. § 1132(a), (e). The court reviews de novo the denial of benefits "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989). Where the plan gives the plan fiduciary that discretionary authority, the fiduciary's decision to deny benefits will be reviewed under the arbitrary and capricious standard. Lickteig v. Business Men's Assur. Co. of America, 61 F.3d 579, 583 (8th Cir.1995). Indeed, such a decision will constitute an abuse of discretion only if the action is "extraordinarily imprudent or extremely unreasonable." Id. (citations omitted).
In this case, the UPS Summary Plan states that:
UPS shall have the exclusive right and discretion to interpret the terms and conditions of the Plan, and to decide all matters arising in its administration and operation, including questions pertaining to eligibility for, and the amount of, benefits to be paid by the Plan. Any such interpretation or decision shall, subject to the claims procedure described herein, be conclusive and binding on all interested persons and shall, consistent with the Plan's terms and conditions, be applied in a uniform manner to all similarly situated participants and their covered dependents.
(Defs.Exh. L at 71-72.) ERISA and the Summary Plan authorize UPS to delegate to Aetna the day to day "administrative services with regard to the processing of claims and the payment of benefits." (29 U.S.C. § 1102(c)(1); Defs.Exh. L at 72-73.) The language quoted above confers discretionary authority on UPS to determine eligibility for benefits and to construe the terms of the Plan. Therefore, this Court will review defendants' decision to deny plaintiff benefits under the arbitrary and capricious standard.

*1343 II. Facts
Defendants and plaintiff have submitted evidence establishing the following facts. Plaintiff is suing defendants for denying his claim and refusing to pay for dental implants. Under the UPS Plan, "[n]o benefits are payable for ... [d]ental implants (unless specifically approved in advance)." (Defs.Exh. L at 49.) The predetermination of benefits is described in the Summary Plan:
There are frequently different treatments that will satisfactorily correct dental conditions; some may be less expensive than others. For instance, an amalgam filling may be as effective as a gold filling. For this reason, the plan has a feature that lets you know in advance what benefits will be paid. If you anticipate that charges for a course of dental or periodontal treatment will be more than $300, the plan requires you to submit an itemization of the proposed treatment (including recent pre-treatment X-rays) before work is begun. A dental consultant will review the proposed treatment plan and inform you and your dentist of the amount of covered charges. That way, you'll understand the benefits that can be paid, before treatment begins.
(Defs.Exh. L at 49.) According to the Plan, the participant is "responsible for furnishing to Aetna all diagnostic and evaluative material which it may require." (Defs.Exh. C at 46.) Such material might include "x-rays, models, charts and written reports." (Id.)
Plaintiff has provided the Court with an Aetna internal memorandum dated April 1989 which details its policy on claims for dental implants: "For those plans that do not exclude implants, coverage will be available for all recognized implants determined by consultant review to be necessary and appropriate." (Pl.Exh. III at 28 (emphasis in original).) "Recognized" implants include the endosseous implants sought by plaintiff. (Id.) Furthermore, the terms of the Plan preclude coverage for charges for services and supplies "[n]ot necessary, as determined by Aetna, for the diagnosis, care or treatment of the physical or mental condition involved. This applies even if they are prescribed, recommended or approved by the attending physician or dentist." (Defs.Exh. C at 54.)
If Aetna denies a claim, then a beneficiary may appeal the denial to UPS. The Summary Plan describes the appeal process:
If you believe further review is needed, you may submit within 60 days of a claim denial, a written request for review through your district Human Resources department, who will send it to the appropriate carrier for a review of the denial. You or your authorized representative may look at relevant documents and submit issues and comments in writing.
Within 60 days after your request for review is received, a decision on the denial normally will be made. You will receive a copy of the decision, in writing, including the specific reasons for it and references to the Plan provisions on which it is based.
If special circumstances require a review period of longer than 60 days, the time for making a final decision may be extended, and you'll be furnished notice of the extension within 60 days after your requested review. However the total review period will not be longer than 120 days.
(Defs.Exh. L at 59-60.)
Plaintiff provided the Court with excerpts from the deposition of William Balzer. William C. Balzer is a UPS employee and oversees the administration of all active health care, long-term disability, life insurance, and retiree health care. (Blazer Dep. at 6.) His duties include overseeing the handling of dental claims by Aetna. (Blazer Dep. at 6.) He is also a member of the UPS Corporate Benefits Appeals Committee (the "Appeals Committee"), along with Carmen Borrelli, a UPS claims processor with experience in handling dental benefits, and Liz Calvert, an in house attorney with UPS who does not have a dental background. (Balzer Dep. at 7.) He described the appeal process as follows:
Well, basically, the administrative people who put the cases together for us gather as much data from the employee, from the insurance carrier, which in turn is documents that have been submitted to the carrier by the attending physician or dentist *1344 or provider, and we put a time line together of what transpired to cause this claim to wind up in the appeal committee's hands.
(Balzer Dep. at 9-10.) Balzer explained that those administrative people do not usually write the employee for information; instead, they will "tell the employee or ask the employee to provide the district HR [Human Resource] manager with whatever documents they have ... any letters from treating physicians or providers and their own letter as to why they think the claim should go to the appeal committee." (Balzer Dep. at 10.)
In a letter dated June 4, 1991 Dr. Bisch, plaintiff's oral surgeon, expressed his opinion to Aetna that plaintiff would benefit from dental implants. (Defs.Exh. 8.) Dental implants are false teeth permanently placed in the jaw bone. (Bisch Dep. at 66-67.) In a pretreatment estimate of benefits dated July 12, 1995, Aetna informed Dr. Bisch that the claimed benefits would not be covered but that additional information and x-rays would be considered if submitted by the provider (presumably Dr. Bisch himself). (Defs.Exh. 10.) An Aetna dental consultant, Dr. Codi, reviewed Dr. Bisch's correspondence and the x-rays and information in Aetna's possession on September 5, 1991 and determined that the implants were not medically necessary. (Defs.Exh. 13.) In a letter dated September 9, 1991 Aetna informed Dr. Bisch that the proposed dental implant expenses would not be covered. (Defs.Exh. 15.)
In a more detailed letter dated September 27, 1991 Dr. Bisch asked Aetna to reconsider coverage for the dental implants. (Defs.Exh. 16.) Dr. Codi reviewed plaintiff's request on November 14, 1991 and determined again that the implants were not medically necessary. (Defs.Exh. 17.) In a letter dated November 25, 1991 Aetna explained to Dr. Bisch that dental implants for plaintiff would not be covered:
Based on our consultant's review of the information provided, it appears we must maintain our denial of the proposed endosseous implants. The information submitted does not substantiate the need for implants as opposed to conventional dentures. Therefore, the proposed implants are not considered medically necessary. "Necessary" is defined as "widely accepted professionally in the United States as effective, appropriate and essential based upon recognized standards of the health care specialty involved."
(Defs.Exh. 18.) The letter also contained information designed to aid plaintiff in appealing Aetna's decision to UPS. (Id.)
In a letter dated January 13, 1992 Dr. Smith, plaintiff's dentist, expressed his opinion to Aetna that dentures could not provide "clinically acceptable service" and stated that he had referred plaintiff to an oral surgeon for "implant evaluation." (Defs.Exh. 19.) Aetna interpreted the letter as a request for reconsideration and in February of 1992 Dr. Codi again reviewed the information and x-rays concerning plaintiff and concluded that implants were not medically necessary. (Defs.Exhs. 20, 20A.) In a letter dated March 3, 1992 Aetna informed Dr. Smith that it would still deny any claim for implants:
Based on our consultant's review of the x-rays and information provided, it appears we must maintain our denial of the proposed endosseous implants. It appears the patient has sufficient bone present to hold conventional dentures properly, [sic] Therefore, implants do not appear medically necessary to adequately restore function to the arch.
(Defs.Exh. 22.) The letter also contained information designed to aid plaintiff in appealing Aetna's decision to UPS. (Id.)
In a letter dated July 21, 1992, Dr. Smith again wrote Aetna and requested reconsideration of its decision to deny coverage for implants. (Defs.Exh. 23.) Aetna responded in a letter dated August 12, 1992 that it would stand by its decision to deny coverage because no new information regarding plaintiff's dental condition had been provided that had not already been reviewed by its consultant. (Defs.Exh. 24.)
After another request for reconsideration by Dr. Smith, Aetna asked Dr. Smith for more pretreatment panorex x-rays in a letter dated September 2, 1992. (Defs.Exh. 25.) Aetna had another Aetna consultant, Dr. Bump, an oral surgeon, review the x-rays *1345 and information regarding plaintiff, and in a memorandum dated October 12, 1992 Dr. Bump concluded that implants were not medically necessary. (Defs.Exh. 27, 27A.) In a letter dated October 22, 1992 Aetna explained to Dr. Smith that it would not cover the implants:
The Oral Surgical Dental Consultant has reviewed the patients [sic] file; which included full mouth and panorex film, dentist letters, and claim form. This implant is not essential to restore masticatory function. We must therefore, maintain our pervious [sic] benefit determination for the implants.
(Defs.Exh. 28.) The letter, like the November and March letters, contained information designed to aid plaintiff in appealing Aetna's decision to UPS. (Id.)
In January of 1993, plaintiff had his teeth extracted and was fitted for a full denture pending placement of implants. (Birdsell Dep. at 31, 36-37.) Aetna had already approved payment for the extractions and dentures but not the implants. (Birdsell Dep. at 20.) In a letter dated October 15, 1993 plaintiff asked Aetna to reconsider its decision denying coverage for implants. (Defs.Exh. 29.) Plaintiff explained that the lower denture in place was not allowing him to eat solid food because it would slip and hurt. (Id.) In a letter bearing the same date, Dr. Smith also asked Aetna to reconsider its decision denying coverage; he too described plaintiff as suffering from "oral trauma" due to the dentures. (Defs.Exh. 30.) In a letter dated November 11, 1993, Patricia Elders, a UPS Administrative Supervisor, also requested that Aetna reconsider its earlier decision to deny coverage for plaintiff's implants. (Defs.Exh. 32.) Elders also sent more x-rays concerning plaintiff to Aetna. (Defs.Exh. 33.)
On December 2, 1993, another Aetna dental consultant, Dr. Weisenfeld, reviewed plaintiff's file and most recent x-rays and determined that the implants were not medically necessary. (Defs.Exh. 35.) On December 3, 1993 Aetna wrote to plaintiff and explained that:
The consultant has again reviewed the file including the panorex x-rays dated October 19, 1983, and October 4, 1993, the letters from Dr. Jeffrey Smith, Dr. Walter Bisch, Patricia C. Elders and yourself, and the file history, which includes our oral surgical consultant's review. On the basis of the information submitted, the implants do not appear required to adequately restore function. Therefore, our previous determination of benefits is being maintained.
(Defs.Exh. 34.) The letter, like the earlier letters discussed above, contained information designed to aid plaintiff in appealing Aetna's decision to UPS. (Id.)
On December 27, 1993 Dr. Bisch again wrote a detailed letter to Aetna to request further consideration of benefits to cover implants for plaintiff and included a radiograph. (Defs.Exh. 36.) In a letter dated January 20, 1994 Aetna explained to plaintiff that:
The consultant has again reviewed the file including the panorex x-ray dated December 6, 1993, as well as the letter December 27, 1993 from Dr. Bisch. On the basis of the information submitted, the implants do not appear required to adequately restore function. Therefore, our previous determination of benefits is being maintained.
(Defs.Exh. 39.) The letter, like so many of the letters sent before it, provided information designed to aid plaintiff in appealing Aetna's decision to UPS. (Id.)
The implants were put in place some time during December of 1993. (Birdsell Dep. at 36-37.) Plaintiff thereafter retained counsel and in a letter dated March 17, 1994, plaintiff's counsel sought various documents from UPS including the Full and Summary Plans and other information sent to plan participants regarding the Plan. (Defs.Exh. 44.) In the letter counsel does not seek a review of the denied claim by UPS but instead asks that UPS have its attorney contact plaintiff's counsel within seven days. (Defs.Exh. 44 at 2.) On April 15, 1994 UPS sent plaintiff's counsel a letter indicating that in response to her letter, the Appeals Committee reviewed formally and denied plaintiff's claim for implants. (Defs.Exh. 46.) The letter contained the following explanation:

*1346 As noted on page 49 of the Summary Plan Description, dental implants are not covered unless specifically approved in advance by Aetna. In determining whether benefits are payable for implants, the policy that the plan has consistently applied is that the cost of implants will not be paid by the Plan unless it is demonstrated that use of a conventional denture is out of the question. As stated in the attached letter, a review of Mr. Birdsell's medical record by Aetna physicians determined that a conventional denture was a viable alternative to implants.
As noted on page 47 of the Summary Plan Description, replacement of an existing denture is covered only if the existing denture has been installed for at least five years and is no longer serviceable. Mr. Birdsell's upper denture was placed in May, 1991. The lower denture was placed in January, 1993. As a result, the five year installation requirement was not satisfied.
Based upon the above, it is clear that the Committee and Aetna acted properly in administering the terms of the Plan with respect to Mr. Birdsell's claim and that the decision to deny benefits in his case was neither arbitrary nor capricious. Additionally, it is important to recognize that the Plan is not making a judgment as to the desirability [of] implants to Mr. Birdsell, it is only making a judgment as to whether the cost of implants is properly paid by the Plan. This is an important distinction in an era where there are frequently different treatments that will satisfactorily correct dental conditions; some more expensive than others.
(Defs.Exh. 46.) Enclosed with the letter were the Summary Plan Description/Plan Document; the Plan financial statements with accompanying notes; plaintiff's claim file (except for x-rays); and the Summary Annual Report. (Id.) In addition UPS explained to counsel that plaintiff would have to pay $.25 per page to receive copies of Form 5500, the Administrative Services Agreement, and the Trust Agreement for a total cost of $27.50. (Id.) UPS refused to disclose other documents: actuarial statements; terminal reports; other pension board filings; summary of material modifications; and bargaining agreements. (Id.) UPS explained that such documents were either inapplicable to or had not been issued with respect to the Plan. (Id.)

III. Count III: Violation of § 1132(c)(1)
Count III seeks statutory damages pursuant to § 1132(c)(1) in the amount of $100 per day for defendants' refusal to provide information and documents within thirty days of plaintiff's request and defendants' demand for an excessive copying charge. 29 U.S.C. § 1132(c)(1).
Initially, the Court notes that written requests for information made by plan beneficiaries and participants must be responded to within thirty days of receipt. 29 U.S.C. § 1132(c)(1). In this case the disclosures made by UPS were not untimely. As described above, plaintiff's counsel asked UPS in a letter dated March 17, 1995 for various documents. Plaintiff has failed to present any evidence to rebut defendant's proof that it responded and made certain disclosures on April 15, 1995, within thirty days of plaintiff's request. (Defs.Exhs. 44, 46.)
In its April response, UPS provided some documents free of charge, expressed its willingness to provide others with a copying fee of $.25 per page, and refused to produce others because such materials either were inapplicable to the Plan or simply had not been issued with respect to the Plan. UPS calculated the actual cost of providing copies of ERISA documents at $.31 per page. (Defs.Exhs. M, N, O.) However, UPS charged $.25 per page for a total of $27.50. (Defs.Exh. 46.)
UPS is required to furnish certain information to participants and beneficiaries including a summary plan description, summary material modifications to the plan, ERISA notice (under certain circumstances), and summary annual report. 29 C.F.R. §§ 2520.104b-1-2520.104b-5, 2520.104b-10. UPS is authorized to impose a reasonable charge to cover the cost of furnishing a copy of the latest updated summary plan description, the latest annual report, any terminal report, the bargaining agreement, trust *1347 agreement, contract, or other instruments under which the plan is established or operating; however, such charge may not exceed $.25 per page. 29 U.S.C. § 1024(b)(4); 29 C.F.R. § 2520.104b-30. In this case, under ERISA UPS was permitted to charge for copies of Form 5500, the Administrative Services Agreement, and the Trust Agreement. There is nothing unreasonable about the $.25 charge or the total cost of $27.50 for copies.[1] The Court notes that plaintiff's counsel in her letter to UPS wrote: "Please provide what you can free of charge and a list of other items and copying charges per 29 CFR 2520."
Furthermore, plaintiff has not presented any evidence that UPS was required to provide the specific documents which UPS refused to disclose as inapplicable to the Plan or nonexistent with respect to the Plan. Nor has plaintiff presented any evidence that he made any other written requests for information from defendants that would implicate § 1132(c)(1). Indeed, plaintiff admitted that UPS never refused to give him whatever he asked for dealing with the health plan. (Birdsell Dep. at 24, 52.) Therefore, the Court finds that defendants are entitled to summary judgment on Count III as they produced uncontroverted evidence that they did not violate § 1132(c)(1).

IV. Counts I and II: Breach of Fiduciary Duty
In Counts I and II plaintiff asserts that both defendants violated ERISA by arbitrarily and capriciously denying his claim for dental implants and related benefits. In support of his claim, plaintiff alleges that defendants failed to provide him with information in a timely manner and charged excessive copying fees for certain documentation. The Court has already found that defendants are entitled to summary judgment on the basis of such allegations as they comprise Count III.
Plaintiff additionally contends in his Response to Defendants' Motions for Summary Judgment that defendants' decision in this case was arbitrary and capricious because: (1) plaintiff's own clinicians concluded that the implants were medically necessary; (2) the manner in which defendants' decision was made was not consistent with the Plan and did not uniformly treat similarly situated participants; (3) the decision was made without proper information; (4) plaintiff was not provided with specific reasons for denial of his claim as required by § 1133(1); (5) there was no "full and fair review" as required by § 1133(2); and (6) the decision was not timely made under the Plan. (Pl.Resp. to Defs. Mots. for Summ.J. at 7-8.) The Court will address each of plaintiff's contentions.
Plaintiff's first and third arguments go hand in hand: plaintiff's own doctors found that implants were medically necessary and defendants had inadequate information because they, unlike plaintiff's own doctors, did not do an independent clinical evaluation of him. The parties agree that plaintiff has been seen by two physicians: Dr. Smith, a dentist, and Dr. Bisch, an oral surgeon. Plaintiff has not produced any evidence that Dr. Smith concluded that implants were medically necessary: Dr. Smith's letters reveal that he was dissatisfied with plaintiff's dentures and referred him to an oral surgeon, Dr. Bisch, for implant evaluation. (Pl.Exh. III at 43, 45, 51.) Dr. Bisch does conclude that implants are medically necessary in plaintiff's case. (Pl.Exh. III at 25, 42; Def. Exhs. 30.)
However, the fact that the conclusion of one oral surgeon, Dr. Bisch, differed from the conclusions of three Aetna dental consultants, Dr. Codi, Dr. Weisenfeld, and Dr. Bump, an oral surgeon, does not make the decision to deny benefits arbitrary and capricious. Plaintiff has not produced any evidence to show that defendants acted extraordinarily imprudently or extremely unreasonably when choosing to adhere to the views of Aetna's dental consultants over Dr. Bisch. Indeed, plaintiff's Dr. Bisch acknowledged the possibility that different dentists might have different opinions on the medical necessity of implants. (Bisch Dep. at 41.)
Plaintiff cites evidence that he went to Dr. Smith fifteen times for adjustments to his *1348 dentures to support his claim that implants were medically necessary. (Pl.Exh. III at 52-54.) He also states that he had problems keeping the lower dentures in his mouth. (Birdsell Dep. at 32-35.) Plaintiff claims that Aetna should have required a dental consultant to conduct an oral examination of him because a clinical evaluation would have revealed his suffering and forced the consultant to conclude that the implants were necessary.
However, plaintiff has not produced any evidence in this case showing that a clinical evaluation was required to assess the medical necessity of implants. Plaintiff's own oral surgeon admits that he submitted all the information necessary to support his diagnosis that the implants were necessary. (Bisch Dep. at 46-47.) Indeed, the Plan requires the beneficiary to furnish Aetna with all the diagnostic and evaluative material necessary for a determination. (Defs.Exh. C at 46.)
Contrary to plaintiff's assertions, it was not arbitrary and capricious for defendants to adopt the conclusion of their dental consultants over plaintiff's physicians. A plan administrator does not act arbitrarily in adopting one of two competing medical opinions in the absence of evidence suggesting the incompetency of the chosen opinion. Bolling v. Eli Lilly and Co., 990 F.2d 1028, 1029-30 (8th Cir.1993); Tabor v. Prudential Ins. Co. of America, 830 F.Supp. 510, 516 (E.D.Mo.1993). See also Sheppard & Enoch Pratt Hosp. v. Travelers Ins. Co., 32 F.3d 120, 126 (4th Cir.1994). Plaintiff has not produced any evidence casting doubt on the competency of Aetna's dental consultants. Therefore, the Court finds that the first and third of plaintiff's arguments listed above unpersuasive.
Plaintiff's second criticism of defendants' decision attacks the manner in which it was made; plaintiff charges that it was not consistent with the Plan and did not uniformly treat similarly situated participants. To support his claim that the decision was not consistent with the Plan, plaintiff cites the deposition testimony of Balzer. Plaintiff states that Balzer, "where it is confirmed that although this plan did not have a cost containment provision, considered UPS' cost as a major factor and, in fact, the only reports it asked for were from Aetna and where [sic] not on the criteria, or standards, used by the consultant but on costs." (Pl.Resp. to Defs. Mots. for Summ.J. at 8-9.)
The Court has reviewed the excerpts of Balzer's deposition provided by plaintiff. Plaintiff mischaracterizes Balzer's testimony. He does not say that cost is a major factor; he said that it may be considered but that the whether a procedure is medically necessary governs the primary decision to grant or deny benefits. (Blazer Dep. at 66-67.) Balzer's testimony does not support plaintiff's position that the Plan is applied inconsistently or that plaintiff's claim for benefits was denied because of high costs. All the letters in this case from Aetna and UPS clearly explain the denial of benefits as resulting from Aetna's dental consultants' determinations that the implants were not medically necessary. (Defs.Exhs. 15, 18, 22, 24, 28, 34, 39, 46.)
Plaintiff cites the deposition testimony of Dr. Weisenfeld as support for his claim that defendants do not uniformly treat similarly situated participants. Plaintiff states that Dr. Weisenfeld was unfamiliar with the terms of the Plan and "discriminatoryily" considered age as a factor in determining the medical necessity of implants. (Pl.Resp. to Defs.Mots. for Summ.J. at 8.)
The Court has reviewed the deposition excerpt submitted by plaintiff and can find no evidence to support plaintiff's claim that Dr. Weisenfeld was unfamiliar with the terms of the Plan in such a way that would lead to inconsistent application of the Plan or unfair treatment. (Pl.Exh. VI.) Dr. Weisenfeld does cite age as a factor in determining whether implants are appropriate for a patient; however, he explains that the age of a patient effects the condition of her health, of her "body's ability to maintain and generate bone and healthy tissues" sufficient to support the placement of a dental implant. (Weisenfeld Dep. at 26.) There is nothing in the transcript submitted by plaintiff which suggests that the Plan in this case is administered in a discriminatory manner such that *1349 "similarly situated" individuals are treated differently.
As his fourth contention, plaintiff asserts that he was not provided with specific reasons for denial of his claim as required by § 1133(1). Section 1133(1) requires Aetna and UPS to provide a beneficiary or participant with "adequate notice in writing ... [that his claim for benefits was denied], setting forth specific reasons for such denial, written in a manner calculated to be understood by the participant." 29 U.S.C. § 1133(1). The letters sent to plaintiff by Aetna and UPS are not disputed. (Defs.Exhs. 15, 18, 22, 24, 28, 34, 39, 46.)
Plaintiff contends that the reasons for the denial of benefits given in the letters do not comport with ERISA's statutory requirements. The Court does not agree. The first two letters in which Aetna denied coverage contain conclusory language. (Defs.Exh. 10, 15.) However, the fact that initial denials are inadequate does not rise to the level of a § 1133 violation where later letters "contain detailed explanations of [the fiduciary's] decision to deny ... benefits." Davidson v. Prudential Ins. Co. of America, 953 F.2d 1093, 1096 (8th Cir.1992).
In this case all subsequent correspondence provides sufficiently detailed explanations of the denial of benefits. (Defs.Exhs. 18, 22, 24, 28, 34, 39, 46.) Indeed, the history of communication between the parties reveals that plaintiff and his doctors understood why Aetna denied his claims. When Aetna first explained that its consultant had determined that implants were not necessary as opposed to conventional dentures, Dr. Smith responded with a letter describing his view that dentures did not provide clinically acceptable service for plaintiff. (Defs.Exhs. 18, 19.) When Aetna found that plaintiff appeared to have sufficient bone present to hold conventional dentures, Dr. Smith submitted more x-rays for consideration by an Aetna consultant. (Defs.Exhs. 22, 25.) When after reviewing plaintiff's x-rays and information submitted by Dr. Smith and Dr. Bisch, Aetna's oral surgeon concluded that implants were not necessary to restore masticatory function, plaintiff himself wrote Aetna and described his difficulties chewing. (Defs.Exhs. 28, 29.) The Court finds that the uncontroverted letters satisfy the mandate of § 1133(1).
Plaintiff also complains that there was no "full and fair review" as required by § 1133(2). Under § 1133(2), a participant must be afforded "a reasonable opportunity ... for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). Defendants have produced evidence detailing Aetna's painstaking review of plaintiff's multiple requests for benefits to cover implants; Aetna reconsidered and reviewed plaintiff's claim six times over two and a half years. Plaintiff's claim was reviewed by an oral surgeon and two other dental consultants. Aetna sent plaintiff and his doctors numerous letters explaining in sufficient detail the reason for the denial of benefits.
Under the Summary Plan when benefits are denied, a participant or beneficiary may "submit within 60 days of a claim denial, a written request for review through [his or her] district Human Resources department, who will send it to the appropriate carrier for a review of the denial." (Pl.Exh. III at 15.) Plaintiff admits that he only submitted letters and claims in writing to Aetna. (Birdsell Dep. at 20-24.)
The only letter provided to this Court which plaintiff sent to UPS was plaintiff's counsel's letter dated March 17, 1995. (Defs.Exh. 44.) The letter, sent three days shy of the expiration of plaintiff's time to demand UPS review of the January, 1994 decision by Aetna denying benefits, sought only information and did not request a review by UPS of plaintiff's denied claim. (Defs.Exh. 44.) Indeed, the letter was insufficient to initiate a review.
However, UPS decided to construe the letter as a request for review and had its Appeals Committee review Aetna's disposition of plaintiff's claim. The Appeals Committee conducted its review based on all the materials submitted to Aetna by plaintiff and plaintiff's doctors and on Aetna's dental consultants' conclusions. The Appeals Committee did not seek any additional information from plaintiff; however, the Court notes that *1350 plaintiff had already received the implants and that the Appeals Committee had all of the information plaintiff and his doctors had submitted to Aetna, as well as the consultants' reports.
The fact that the Appeals Committee did not hold a hearing involving plaintiff does not mean that plaintiff's claim denial did not receive a full and fair review. Full and fair review "`must be construed not only to allow a pension plan's trustees to operate claims procedures without the formality or limitations of adversarial proceedings but also to protect a plan participant from arbitrary or unprincipled decision-making.'" Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 157 (4th Cir.1993) (quoting Grossmuller v. International Union, 715 F.2d 853, 857 (3d Cir.1983)).
Furthermore, in the letter dated April 14, 1995 informing plaintiff of the Appeals Committee's decision, plaintiff was invited to submit "any additional information which he feels the Committee should consider." (Defs.Exh. 46 at 2.) Plaintiff has provided no evidence that he submitted any additional information to the Committee. The evidence submitted by defendants establishes that plaintiff was provided with a full and fair review of the denial of his claim for benefits despite the fact that plaintiff never formally sought review by the Appeals Committee in accordance with the Plan. Plaintiff has not filed any evidence with the Court rebutting defendants' proof. Therefore, the Court finds that plaintiff received full and fair review in accordance with ERISA.
Plaintiff's final argument, that the decisions rendered by defendants were not timely under the Plan, lacks merit. Plaintiff argues that plaintiff's requests should have been decided within 120 days as stated in the Summary Plan; plaintiff states that his letters dated September and November, 1993 were not addressed until April, 1995 when the Appeals Committee reviewed and denied plaintiff's claim for benefits.
First, those letters dated in October (the record does not contain a September letter) and November of 1993 from plaintiff and Dr. Smith respectively were sent to Aetna and not to UPS. The Appeals Committee was under no obligation to review plaintiff's claim until plaintiff submitted it in writing to UPS according to the terms of the Plan. (Pl.Exh. III at 15.) Indeed, plaintiff never did submit a request to the Appeals Committee in writing as discussed above. Therefore, plaintiff's characterization of UPS' review as untimely is disingenuous.
The Court has reviewed the record of correspondence and finds that Aetna promptly responded to plaintiff's multiple requests for review and reconsideration. Aetna did not spent more than 120 days reviewing any one of plaintiff's many requests for review and reconsideration. UPS reviewed plaintiff's request within only thirty (30) days. The Court notes that under ERISA, an untimely review is simply to be construed as a denial of benefits. 29 C.F.R. § 2560.503-1(h)(4).
In light of the foregoing, the Court finds that defendants has produced uncontroverted evidence that their decision to deny benefits in this case was not arbitrary and capricious. Therefore, the Court will grant defendants's Motions for Summary Judgment.
NOTES
[1] Defendants point out that plaintiff admitted in his deposition that he could afford to pay for copies costing less than $30 if he "needed" the documents. (Birdsell Dep. at 58-59.)