Michael V. DAWES, Plaintiff,

v.

**FIRST UNUM LIFE INSURANCE COMPANY, Defendant.**

No. 91 Civ. 0103 (KMW).

United States District Court,
S.D. New York.

March 29, 1994.

Marshall M. Kolba, Sullivan & Liapakis, P.C., New York City, for plaintiff.

Evan L. Gordon, Bangser, Klein & Rocca, New York City, for defendant.

### MEMORANDUM OPINION AND ORDER

KIMBA M. WOOD, District Judge.

In this action, plaintiff Michael V. Dawes ("Dawes") seeks recovery of present and future disability benefits from defendant First Unum Life Insurance Company ("UNUM"). The dispute arises from UNUM's. denial of Dawes' claim of disability, based on his alcoholism. Presently before the court are three issues to be resolved prior to trial:[1] (1) which standard of review should be applied to review defendant's decision to deny disability benefits; (2) is the question of defendant's liability for future benefits a question for the court or for the jury; and (3) what is the governing definition of "regular occupation." For the reasons set forth below, the

---

**1.** The issues resolved in this opinion have been raised somewhat haphazardly in the parties' requests to charge and in their briefs on motions previously decided.

court concludes that a *de novo* standard of review should apply; future benefits are a question for the jury; and the applicable definition of "regular occupation" is preliminarily identified as any employment of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties.

Discussion

## I. *Standard of review.*

■ Plaintiff contends that the court should apply a *de novo* standard of review in considering the insurance company's decision to deny him disability benefits. Defendants respond that either an arbitrary and capricious or abuse of discretion standard should apply.

The Supreme Court addressed this question in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), holding that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. at 115, 109 S.Ct. at 956. Although UNUM concedes that the plan at issue does not give the administrator discretion to determine eligibility or construe the plan, UNUM urges the court to adopt an arbitrary and capricious or abuse of discretion standard, because the plan administrator "had certain discretion to administer the plan." Defendant's Memorandum in Support of its Motion to Exclude Evidence, at n. 2 ("Defendant's Exclusion Mem."). In making this argument, UNUM misconstrues *Bruch* and its progeny. The cases on which UNUM relies involve insurance plans that, unlike the plan at issue here, expressly assign discretionary authority over eligibility determinations to the administrator. *See Boyd v. Trustees of United Mine Workers Health & Retirement Funds*, 873 F.2d 57, 59 (4th Cir.1989) (applying abuse of discretion standard where plan trustees "have the power of 'full and final determination as to all issues concerning eligibility for benefits' "); *Bali v. Blue Cross and Blue Shield Ass'n*, 873 F.2d 1043, 1047 (7th Cir. 1989) (applying abuse of discretion standard

where plan "clearly gives the administrator discretion as to the amount and kind of information required to prove disability"). These cases simply follow the plain language of the *Bruch* holding: *de novo* review applies except where the administrator has discretion over plan interpretation or eligibility determinations, in which case a more deferential standard is appropriate. These cases do not support UNUM's suggestion that an abuse of discretion standard should apply whenever an administrator enjoys some vaguely defined discretion to administer the plan. *C.f. Scalamandre v. Oxford Health Plans Inc.*, 823 F.Supp. 1050, 1059 (E.D.N.Y.1993) ("in the vast majority of decisions since [*Bruch* ] that have held that a deferential standard of review applies there were explicit provisions in the respective plans giving the trustee or plan administrator discretion to interpret the plan"); *Clark v. Bank of New York*, 801 F.Supp. 1182, 1189 (S.D.N.Y.1992) ("a narrow view of when a plan document confers discretionary authority is needed to check the potential for biased decisions on the part of ERISA plan administrators") (internal quotations omitted); *Guisti v. General Electric Co.*, 733 F.Supp. 141 (N.D.N.Y.1990) (same). Because the instant plan gives the administrator no particular discretion over eligibility or plan interpretation, *Bruch* dictates that a *de novo* standard of review should apply.

■ UNUM argues, however, that *Bruch* notwithstanding, an abuse of discretion or arbitrary and capricious standard should apply in this case, because the determination at issue was based on a factual finding by the claims administrator. Defendant's Exclusion Mem. at 6. In support of this argument, UNUM notes that the *Bruch* Court indicated that its discussion was "limited to the appropriate standard of review in § 1132(a)(1)(B) actions challenging denials of benefits *based on plan interpretations*." *Bruch*, 489 U.S. at 108, 109 S.Ct. at 953 (emphasis added). UNUM claims that its conclusion that Dawes is not disabled was based on findings of fact, rather than an interpretation of the plan, and therefore, the *Bruch* holding does not apply here.

Since *Bruch* was decided, there has developed a difference of opinion among Courts of Appeals regarding the standard of review for findings of fact. *See Pierre v. Connecticut General Life Insurance Co.,* —— U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991) (White, J., dissenting) (dissenting from denial of certiorari and noting need to resolve dispute between Third and Fourth Circuits, employing *de novo* review, and Fifth Circuit, using abuse of discretion standard). The Court of Appeals in this circuit has not taken a position on the issue. This court finds the decisions choosing *de novo* review of factual findings more persuasive. A *de novo* standard of review is not only consistent with the holding in *Bruch,* but it also serves the policy behind ERISA, which is to protect the interests of beneficiaries of employee benefit plans. *See Luby v. Teamsters Health, Welfare & Pension Trust Funds,* 944 F.2d 1176, 1185–86 (3d Cir.1991); *Guisti,* 733 F.Supp. at 147–48.

Consideration of ERISA policy is particularly appropriate in this case, where the administrator failed to comply fully with ERISA's procedural regulations. In an Opinion and Order dated November 12, 1992, 1992 WL 350778, I found that UNUM neglected its obligation under ERISA to give Dawes timely notice of the specific reasons for denial and to describe with sufficient specificity the additional information required for Dawes to perfect his claim. Opinion & Order, 8–9 (Nov. 12, 1992). I concluded that it would be inappropriate to preclude admission of evidence that had not previously been submitted to the claims administrator, because the fault for the incomplete submission of evidence rested with the administrator. *Id.* at 9–10. For substantially the same reasons, it would defeat ERISA policy to apply a deferential standard of review to the procedurally defective determination of facts underlying UNUM's denial of Dawes' claim.

Even if this circuit decided that a deferential standard of review should generally apply to administrators' factual findings, the court concludes that a *de novo* standard is appropriate in this case, because UNUM's decision to deny benefits was based not only on its finding of facts, but more significantly, on its interpretation of the plan and applica-

tion of the plan to those facts. As is evidenced by the parties' dispute over the proper definition of Dawes' "regular occupation" discussed *infra,* Dawes' disability status turns largely on interpretation of the plan. Although eligibility determinations necessarily require some factual findings, "the validity of a claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue." *Bruch,* 489 U.S. at 114, 109 S.Ct. at 956. *Bruch,* creates a presumption of *de novo* review, from which a court should not depart just because the eligibility determination at issue requires determination of some questions of fact. *See Guisti,* 733 F.Supp. at 147 (applying de novo review to both factual findings and plan interpretations where it was "far from clear ... that the defendants' decision to deny benefits was based solely on factual findings"). Thus, the court concludes that a *de novo* standard of review should be applied in this case.

## II. *Question of future benefits.*

■ As noted above, the parties are in dispute over whether the question of Dawes' eligibility for future benefits should be decided by the judge or the jury. As the court recognized in its Opinion and Order of November 12, 1992, the text and legislative history of ERISA are silent on the right to a jury trial. Opinion and Order at 12. In *Katsaros v. Cody,* the Second Circuit Court of Appeals held that the right to a jury trial in an ERISA case turns on whether the claim is legal or equitable, which in turn depends on the relief sought. 744 F.2d 270, 279 (2d Cir.), *cert. denied* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). In the Opinion and Order, I applied the *Katsaros* rule to this case, and found plaintiffs entitled to a jury trial. The parties now ask the court to clarify whether the right to a jury trial applies to the question of future benefits as well as to present benefits. Defendant contends that while the jury can determine benefits currently due under the plan, determination of whether defendant is permanently disabled and therefore entitled to future benefits should be reserved for the court. Plaintiff counters that both questions should be submitted to the jury.

■ Under *Katsaros,* whether the court or the jury should determine Dawes' entitlement to future benefits depends on whether an award of such benefits would be legal or equitable in nature. In *Katsaros,* the Court of Appeals found no right to a jury trial "since the plaintiffs [sought] equitable relief in the form of removal and restitution as distinguished from damages for wrongdoing or nonpayment of benefits." *Katsaros,* 744 F.2d at 279. By contrast, in this case, plaintiff sues for damages for nonpayment of benefits. The court can find no reason to differentiate between present and future benefits. Plaintiff's claims of entitlement to both kinds of benefits arise out of a contract and present a request for a traditionally legal remedy—money damages. *See Smith v. Union Mutual Life Insurance Co.,* 1990 WL 209456 *2 (S.D.N.Y.1990) (finding right to a jury trial in action seeking both past and future benefits). Determination of which benefits are due under the contract requires a type of factual analysis that is not unusual for a jury. To determine defendant's rights to future benefits, the fact-finder in this case must assess Dawes' illness, consider the nature of his regular occupation, and determine whether in light of these facts he is permanently disabled under the terms of the contract. Such an analysis is well within the jury's ken. *See Vicinanzo v. Brunschwig & Fils, Inc.,* 739 F.Supp. 882, 885 (S.D.N.Y.1990) ("factual questions arising in connection with contractually defined rights lie at the heart of this action, and these matters are 'particularly appropriate for resolution by a trial jury' ") (quoting *Paladino v. Taxicab Industry Pension Fund,* 588 F.Supp. 37, 39 (S.D.N.Y. 1984)).

In sum, I agree with Judge Brieant's dictum in *Paladino:* it is not rational to assume

> that Congress intended that the right to a jury trial *vel non* should depend on whether immediate benefits are available, as they apparently are in this case, in which event, the action is an action for a money judgment, or whether a declaratory judgment is sought that benefits will be available at a future time. In the latter action, the would be pensioner wants to adjudicate his rights in advance of entitlement, while the witnesses are available and in order

> that he may make plans for the future. There is no logical reason to require plaintiff in the latter case to give up his right to a jury simply because no payment is currently due.

*Paladino,* 588 F.Supp. at 39. In light of the foregoing considerations, I hereby reaffirm my Opinion and Order. Plaintiff shall have the right to a jury on the question of future, as well as present, benefits.

## III. *Definition of "regular occupation."*

Dawes' claim arises under a group long-term disability insurance policy issued by UNUM to Dawes' former employer, Discount Corporation of New York ("DCNY"), a government bond and securities trading firm. The insurance policy defines disability in terms of the insured's ability to perform the duties of his "regular occupation." The parties are in dispute over the meaning of this terminology. The insurance policy provides that it is to be construed under the laws of New York.

At the time that Dawes allegedly became disabled, he was serving as Senior Vice President and National Sales Manager of DCNY. Dawes claims that in this position, his primary duty was to act as "a highly visible chief 'contact' salesperson who was expected to travel and entertain frequently on behalf of the company in a social and business setting." Plaintiff's Mem. of Law, at 12. Dawes urges the court to charge the jury that this position was his "regular occupation." *See* Plaintiff's Request to Charge, at 1. UNUM would have the court to define "regular occupation" more broadly as "the 'principal business of one's life: a . . . profession or other means of earning a living.'" Defendant's Request to Charge, at 2 (quoting *Webster's Third New International Dictionary* (1986)). The court chooses a definition of "regular occupation" that falls between the two definitions suggested by the parties.

Disability insurance policies generally fall into two classes: occupational insurance, which provides coverage if the insured is unable to pursue the particular occupation in which he was previously engaged; and general insurance, which provides coverage only

if the insured is unable to pursue any occupation. 15 *Couch on Insurance 2d* § 53.45 (1983). The policy at issue here provides for occupational insurance. *See Niccoli v. Monarch Life Insurance Co.,* 70 Misc.2d 147, 332 N.Y.S.2d 803, 805 (Sup.Ct.1972), *aff'd* 45 A.D.2d 737, 356 N.Y.S.2d 677 (2d Dep't, 1974), *aff'd* 36 N.Y.2d 892, 372 N.Y.S.2d 645, 334 N.E.2d 594 (1975). Under such a policy, "regular occupation" is defined more narrowly than any means for making a living, but it is not limited to the insured's particular job. Although many of the New York decisions involving occupational policies turn on particular facts, the courts seem to define the comparable occupation as a position of the same general character as the insured's previous job, with similar duties and training requirements. *See Niccoli,* 332 N.Y.S.2d 803 (finding doctor who had specialized in gynecological surgery and obstetrics unable to engage in his "regular occupation," although he had secured a position as hospital Director of Family Planning and Sex Education); *see also Dixon v. Pacific Mutual Life Insurance Co.,* 268 F.2d 812 (2d Cir. 1959) (in diversity case, surgeon entitled to recover under occupational insurance policy although he had obtained a position requiring a physician's license as a hospital administrator), *cert. denied,* 361 U.S. 948, 80 S.Ct. 403, 4 L.Ed.2d 381 (1960); *cf. Waldman v. Mutual Life Insurance Co.,* 252 A.D. 448, 299 N.Y.S. 490 (2d Dep't 1937) (finding error under general disability insurance policy in lower court's occupational insurance jury instruction defining occupation as that "in which he had been trained and worked during his working life, ... or in work of the same general character where he could be gainfully employed in an occupation reasonably comparable in type and remuneration"). Therefore, subject to any revision the court may find appropriate in the course of a charging conference, the applicable definition of "regular occupation" shall be a position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties.

## Conclusion

For the reasons noted above, the court concludes that a *de novo* standard of review shall apply, and the question of future benefits shall be submitted to the jury. The court also preliminarily adopts a definition of "regular occupation" as a position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties.

SO ORDERED.