Mercedes C. **DIONIDA**, Plaintiff,

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY, St. Luke's Hospital Group Long Term Disability Insurance Program, Defendants.**

**No. C 97–20860 PVT.**

United States District Court,
N.D. California,
San Jose Division.

April 12, 1999.

Melvyn D. Silver, Ruth, Silver, Taube, San Jase, CA, for plaintiff.

Jeffrey P. Miller, Celebregge & Wesley, San Francisco, CA, for defendants.

## OPINION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

TRUMBULL, United States Magistrate Judge.

### I. INTRODUCTION

Plaintiff Mercedes Dionida ("Dionida") is suing Defendants for disability benefits

under the Employee Retirement Income Security Act of 1974 ("ERISA"). Dionida is a registered nurse who was employed by St. Luke's Hospital in San Francisco. St. Luke's provides its employees with the St. Luke's Hospital Group Long Term Disability Insurance Program (the "LTD Plan"), which is insured by Defendant Reliance Standard Life Insurance Company ("Reliance").

Dionida submitted a claim for disability benefits arising from back and shoulder problems. Reliance initially approved Plaintiff's claim, but shortly thereafter reviewed her claim and denied it based on a Transferable Skills Analysis that identified eight "suitable occupations" for Dionida. On Dionida's appeal of the denial, Reliance affirmed its decision to deny her claim.

For the reasons discussed below, the court reviews *de novo*, rather than for abuse of discretion, Reliance's decision to deny benefits. The court finds that under either standard of review, Reliance's decision was erroneous because it applied an "any occupation" standard rather than the "regular occupation" standard required by the LTD Plan. Based on the fully developed record, the only possible conclusion is that Dionida is unable to perform the duties of her regular occupation, and is thus entitled to benefits.

## II. FACTS

On July 17, 1995, Dionida submitted to Reliance a statement of claim for long term disability benefits under an insurance policy issued to her employer, St. Lukes Hospital. In her statement of claim, she identified her disability as "severe low back pain radiating to right leg, and right shoulder." The LTD Plan's description of "Total Disability" requires that during the first 66 months [1] of disability the claimant be unable to perform the material duties of his or her "regular occupation." She described her occupation as "Staff Registered Nurse."

The administrative file for Dionida's claim contains several supporting records from her doctors. Prior to Reliance's initial approval of Dionida's claim, the primary support for her claim came from her treating physician, Cesar Ortiz, M.D. Dr. Ortiz completed a Physician's Statement of Disability form supplied by Reliance. In it he identified the diagnoses as: 1) Chronic Degenerative Change in Acromioclavicular Joint with Encroachment on Rotation Cuff; 2) Degenerative Arthritis of Lumbar Spine with Slipped of L4 on L5; and 3) Bilateral Radiculopathy. He indicated that Dionida was totally disabled from her regular occupation and from any occupation.

There are also several other Disability Certificates and Doctor's Certificates in the administrative file that Dr. Ortiz apparently filled out for submission to St. Lukes and California's Employment Development Department ("EDD") in connection with Dionida's disability leave and disability claims. The file also contains copies of Dr. Ortiz's records and a Physical Capacities form he filled out at Reliance's request. On the Physical Capacities form, he indicates that Dionida is capable of lifting/carrying a maximum of ten pounds, which is characterized on the form as "sedentary work." He also indicates restrictions on bending, squatting, climbing, reaching above the shoulder, kneeling, crawling and using foot controls. The administrative record also contains a few records from other doctors that do not add materially to the information provided by Dr. Ortiz.

In addition to the medical records, Reliance asked Dionida and St. Lukes Hospital to submit information regarding Dionida's job. A job description from St. Lukes states that Dionida's job requires a "full range of body motion including handling and lifting patients..." and an ability to lift and carry items weighing up to 40

---

1. The LTD Plan describes this time period as "during the Elimination Period and for the first 60 months for which a Monthly Benefit is payable." The Elimination Period is 180 days.

pounds. A Job Analysis Description submitted by St. Lukes states that Dionida's job requires her to carry items weighing 26 to 49 pounds ten percent of the time, items weighing 50 to 100 pounds ten percent of the time, and items weighing over 100 pounds ten percent of the time.

Reliance approved Dionida's claim on February 1, 1998. Six weeks after approving Dionida's claim, Defendants decided to require Plaintiff to submit to an independent medical examination ("IME"). The IME was performed by Robert Branick, M.D. He stated in his report that:

"1) The results of the physical examination are inconclusive in determining significant disability. The objective studies that are available do document disability related to impingement of the right shoulder as well as fairly mild degenerative changes in the lumbar spine which will cause some restrictions as mentioned above, that is, repetitive bending, stooping, lifting, and carrying of weights in excess of 25 pounds.

" * * * *

"5) This has been answered above. Barring appropriate medical or surgical treatment, the patient will have permanent limitations.

"6) The patient's limitations will interfere with the ability to work as a registered nurse. Any other work that could be carried out aside from that requiring bending, lifting, and carrying would be permissible. Sedentary work, keyboard work, work requiring mobility, etc., would all be permissible."

Dr. Branick also completed a Physical Capacities form, on which he indicates that Dionida was capable of lifting/carrying a maximum of 20 pounds (in his narrative report he says 25 pounds), which is characterized on the form as "light work." He also indicates restrictions on bending, climbing, and reaching above the shoulder.

Based on Dr. Branick's IME report and Physical Capacities form, Reliance asked its Vocational Rehabilitation Consultant, Rabia Rosen, to do a Transferable Skills Analysis ("TSA"). Rosen reported the results of the TSA in a memorandum dated June 19, 1996. Rosen stated that "[b]ased on her work history and her current capabilities and utilizing the OASYS system,[2] a TSA was performed and eight suitable occupations were identified for this claimant." Accompanying the memorandum is a computer printout that contains: 1) a DOT occupation description for "Nurse, General Duty"; 2) a statement of the occupational demands for "Nurse, General Duty"; 3) a list of related codes and titles; and 4) a list of eight "target DOT occupations."

A June 19, 1996, notation in the file states "OK to write up / not TD any occ— RN Can do other duties."

A June 26, 1996 memorandum states "TSA completed—not T.D. own occ as 'nurse' positions were identified within clmts physical capacities" and recommends denying the claim. A notation dated July 2, 1996 on the same memorandum says "OK to write denial letter."

By letter dated July 3, 1996, Reliance denied Dionida's claim for disability benefits. Reliance acknowledges in the letter that Dionida's condition limits her ability to lift or carry weight in excess of 25 pounds and that Dr. Branick found she is limited to light work. Reliance stated that, based on Dr. Branick's findings regarding Dionida's physical capacities, there were positions within the "occupational field of nursing" that Dionida could perform. Reliance specifically cited School Nurse, Office Nurse, Director of Nurses' Registry and Stress Test Technician. Reliance stated it was denying the claim because, based on the foregoing, Dionida did not meet the LTD Plan's definition of To-

---

2. Although Defendants did not provide any information as to what the "OASYS system" is, it appears from the context of Ms. Rosen's memorandum and the accompanying printout that it is a computer program used to match employees with jobs based on the employees' skills and capabilities.

tal Disability from her regular occupation of Registered Nurse.

On July 25, 1996, Dionida requested review of Reliance's denial of her claim. By letter dated February 3, 1997, Reliance informed Dionida that it had reviewed her claim and had determined that the decision to deny her claim was correct. In explaining its decision, Reliance stated that:

"Given the job duties at St. Luke's Hospital, Ms. Dionida is classified as a Staff Nurse. The duties and responsibilities necessary to carry out the job duties may differ from other jobs she may have with another employer in her occupation as Registered Nurse. However, we are required to evaluate the material duties of a Registered Nurse occupation in its entirety and determine if an individual is capable of performing these material duties in another work environment or for another employer. The eight positions identified by the RSL vocational staff and the material duties they incorporate are of a sedentary and light nature. They are all classified by the Department of Labor as positions within the occupation of Registered Nurse."

By letter dated July 5, 1997, Dionida sought further review of her claim. By letter dated August 5, 1997, Reliance declined to reconsider its decision and informed Dionida that she had exhausted all administrative avenues for review of her claim.

On September 29, 1997, Dionida filed the instant action for disability benefits.

## III. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See, Fed. R. Civ. Proc., Rule 56(c). On cross-motions for summary judgment, the court must determine whether one of the parties is entitled to judgment as a matter of law based on the undisputed facts. See, *Manetas v. International Petroleum Carriers, Inc.*, 541 F.2d 408, 413 (3rd Cir. 1976).

### B. STANDARD FOR REVIEWING A PLAN ADMINISTRATOR'S DETERMINATION

Under ERISA, a plan administrator's decision to deny benefits is reviewed *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). "When discretion is conferred, the exercise of that discretion is reviewed under the arbitrary or capricious standard, or for abuse of discretion, which comes to the same thing." *Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir.1996) citing *Atwood v. Newmont Gold Co.*, 45 F.3d 1317, 1321 at n. 1 (9th Cir. 1995).

Reliance argues that the LTD Plan confers upon it discretion to interpret the terms of the LTD Plan. The disputed LTD Plan language reads:

"INSURING CLAUSE: We will pay a monthly benefit if an insured:

(1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy;

(2) is under the regular care of a physician;

(3) has completed the Elimination Period; and

(4) submits satisfactory proof of Total Disability to us."

Reliance contends that the foregoing language is essentially the same as the language the Ninth Circuit found conferred discretion in *Snow v. Standard Ins. Co.*, 87 F.3d 327. The plan term at issue in *Snow* provided that there would be no benefit paid unless Standard was presented with what it considers to be satisfactory written proof of the claimed loss. However, as Dionida points out, the language at

issue relates to the plan administrator's discretion to determine eligibility, while the issue in the present case involves plan interpretation.[3] The Court's discussion in *Firestone* indicates that there are two separate kinds of discretion that may be conferred on a plan administrator, discretion to determine eligibility and discretion to construe the terms of the plan. *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. And any such grant of discretion must be unambiguous. See, *Kirwan v. Marriott Corp.*, 10 F.3d 784, 788 (11th Cir.1994); *Cathey v. Dow Chemical Co. Medical Care Program*, 907 F.2d 554, 559–60 (5th Cir.1990), cert. denied, 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991). The LTD Plan in the present case contains no unambiguous grant of discretion to construe its terms. Thus, *de novo* review is warranted. Although, as discussed below, under either standard of review, the court finds that Reliance's decision was erroneous.

### C. DIONIDA IS ENTITLED TO BENEFITS BECAUSE SHE IS TOTALLY DISABLED FROM HER REGULAR OCCUPATION AS "NURSE, GENERAL DUTY."

■ The dispute over whether Dionida is entitled to disability benefits turns on a determination of what her "regular occupation" is within the meaning of the LTD Plan. For the reasons discussed below, the court finds that Dionida's regular occupation is "Nurse, General Duty," as that occupation is defined in the Department of Labor's Dictionary of Occupational Titles (the "D.O.T.").

■ The term "regular occupation" may be fairly construed to mean "a position of the same general character as the insured's previous job, with similar duties and training requirements." *Dawes v. First Unum Life Insurance Co.*, 851 F.Supp. 118, 122 (S.D.N.Y.1994). There are various ways to determine what positions fall within a claimants "regular occupation" under the foregoing description. One method would be to have a vocational evaluation performed to compare the character, duties and training requirements of a claimant's job with various other jobs in order to define the parameters of a claimant's "regular occupation." Another method would be to determine which of the D.O.T. occupational titles covers the claimant's previous job. The latter method is equally reasonable and most likely more efficient.[4] However, this determination cannot be made by arbitrarily grouping

---

3. Dionida also argues that the LTD Plan language at issue here is distinguishable from that in *Snow* because it does not specify to whom the proof must be satisfactory. Dionida directs the court's attention to a case currently before the Ninth Circuit for *en banc* review, and which involves language that is more similar to that at issue here. See, *Kearney v. Standard Insurance Company*, 144 F.3d 597 (9th Cir.1998), review granted 152 F.3d 1098 (9th Cir. Aug.3, 1998). As here, the plan term in *Kearney* required "satisfactory proof" but did not specify who the proof must satisfy. A three judge panel of the Ninth Circuit found the language too ambiguous to confer discretion, and upheld the trial court's decision to conduct a *de novo* review. *Kearney v. Standard Insurance Company*, 144 F.3d at 605–07. This court declines to predicate its decision on speculation regarding how the Ninth Circuit may resolve the issue in *Kearney* on *en banc* review.

4. The D.O.T. is the result of over fifty years of occupational data collection and evaluation for the very purpose of defining specific "oc-

cupations." See, D.O.T. (4th ed., rev.1991) at p. xv. The D.O.T. groups various jobs into "occupations" based on their similarities, and thus an "occupation" in the D.O.T. covers more than one particular job. See, D.O.T. at p. xvii. The D.O.T. is widely and routinely used to define "occupations" in the U.S. economy. See, e.g., *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir.1986); *Johnson v. Shalala* 60 F.3d 1428 (9th Cir.1995); and *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir.1990), and *Sherwin v. Secretary of Health and Human Services*, 685 F.2d 1 (1st Cir.1982). See also, 20 C.F.R. § 404.1566(d)(1); 20 C.F.R. § 404.1568; 20 C.F.R. § 404.1569. Given the amount of research and analysis that has gone into grouping similar jobs and defining the occupational titles, and the length of time the D.O.T. has been widely used, it is reasonable for plan administrators, and courts, to use it for determining a claimant's "regular occupation."

together different occupations that are listed and defined *separately* in the D.O.T.[5]

In the present case, it is undisputed that Dionida's previous job falls within the occupational title of "Nurse, General Duty" (alternate title "nurse, staff"), under D.O.T. occupational code number 075.364–010. The occupation of "Nurse, General Duty" has a strength rating of "medium work," which requires the ability to lift/carry up to 50 pounds. It is further undisputed that Dionida is only capable of "light work" and is restricted from lifting/carrying more than 25 pounds. Thus, Dionida is entitled to benefits because she is unable to perform the material duties of her "regular occupation" of "Nurse, General Duty."

### D. THE COURT WOULD REACH THE SAME RESULT UNDER THE ABUSE OF DISCRETION STANDARD

 The court would reach the same result, even if it were appropriate to review Reliance's denial of Dionida's claim under the abuse of discretion standard of review. A plan administrator abuses its discretion if it renders a decision without any explanation, or in a way that conflicts with the plain language of the plan, or that is based on clearly erroneous findings of fact. See, *Atwood*, 45 F.3d at 1323–24. Here, Reliance's decision conflicts with the plain language of the LTD Plan.

Reliance contends that the term "regular occupation" is unambiguous and has been held to mean a position of the same general character as the insured's previous job, requiring similar skills and training, and involving similar duties. See, *Dawes v. First Unum Life Insurance Co.*, 851 F.Supp. 118 (S.D.N.Y.1994). The court

agrees this construction of the term is reasonable. However, the administrative record demonstrates that Reliance did not apply the term that way. Instead, Reliance erroneously substituted the "any occupation" standard in lieu of the "regular occupation" standard in evaluating Dionida's claim.[6]

The LTD Plan provides for 60 months of disability benefits when a claimant cannot perform the material duties of his or her regular occupation. After that, the LTD Plan continues to provide benefits if the claimant cannot perform the material duties of any occupation. The LTD Plan expressly defines "any occupation" as "one that the insured's education, training or experience will reasonably allow." The wording of the TSA report, the denial letter, and the letter denying Dionida's appeal, show that Reliance construed "regular occupation" to include *other occupations* within an "occupational field" that are "suitable" for a claimant based on work history and current capabilities. The court sees no meaningful difference between this standard and Reliance's express definition of "any occupation."

Under the *Dawes* definition of regular occupation, a job must involve "similar duties" to be considered within a claimant's regular occupation. Although Reliance collected detailed information regarding the duties of Dionida's job from both Dionida and her employer, there is no indication that Reliance compared those duties to the duties of the "other occupations" it relied on in denying her claim. The TSA report provides a list of eight "suitable" D.O.T. occupational titles without listing any of the duties involved in those occupations for comparison with

---

5. The court does not rule out the possibility that grouping D.O.T. occupational titles into a single "occupation" might be permissible if it was founded upon appropriate criteria related to a claimant's prior occupation, rather than a claimant's physical capabilities at the time of the claim. Otherwise the term "regular occupation" could be too easily tailored to defeat a claim by converting the "regular

occupation" standard to the "any occupation" standard.

6. Between June 19, 1996 and June 26, 1996, the notes in the administrative file, without explanation, jump from a statement that Dionida was "not TD *any* occ" to "not TD *own* occ" (emphasis added). Based on the latter notation, approval was given to deny her claim.

Dionida's duties. Rather than compare the nature of the duties for each occupation with the duties of Dionida's prior position, Reliance compared the D.O.T. strength rating for each position with Dionida's then-current physical ability.[7] Thus, instead of defining Dionida's "regular occupation" based on the contours of her previous job, Reliance tailored its definition of Dionida's "regular occupation" to fit her physical capabilities *after* becoming disabled. By doing so, Reliance in effect applied the "any occupation" standard rather than the "regular occupation" standard required by the LTD Plan.

Reliance erroneously contends "Registered Nurse" is a single occupation under the D.O.T. On the contrary, the D.O.T. defines "Registered Nurse" as an occupational *group*. The first three digits in a D.O.T. occupational code number identify a particular "occupational group." See, D.O.T. at p. xviii. All D.O.T. occupational titles with code numbers beginning "075" fall within the occupational group of "Registered Nurses." See, D.O.T. at p. 59–61. The next three digits in a D.O.T. occupational code number identify the "Worker Function ratings" of the tasks performed in the particular occupation. See, D.O.T. at p. xix. These ratings categorize occupations based on the general nature of the tasks involved. "Nurse, General Duty" has a Worker Function rating of 364. No other occupation listed under the Registered Nurse occupational group carries

that same Worker Function rating. Thus, the D.O.T. ratings do not provide any rationale for deeming *any* of the other occupations in the Registered Nurse occupational group to be the same occupation as "Nurse, General Duty."[8]

Reliance also erroneously stated in its letter denying Dionida's appeal that the eight "positions" it had identified were "all classified by the Department of Labor as positions within the occupation of Registered Nurse." On the contrary, only two of the eight *occupations* are classified by the Department of Labor in the occupational *group* "Registered Nurses."

A comparison of the D.O.T. definitions for the eight occupations identified by Reliance in denying Dionida's claim reveals that they all include duties that are not included in the definition of "Nurse, General Duty." For example, the duties of "school nurse" include "plans school health program...," "instruct classes in subjects, such as child care...," and "identifying and meeting social, emotional, and physical needs of school children." This occupation is not of the same general character as Dionida's previous occupation as Nurse, General Duty, and does not require "similar skills and training," and involve "similar duties."[9] The other D.O.T. occupations cited by Reliance suffer from the same defect; they include duties outside of the usual duties of Nurse, General Duty, and there is no evidence in the record that

---

7. For example, in explaining its decision in its denial letter of February 3, 1997, Reliance noted that "The eight positions identified by the RSL vocational staff and the material duties they incorporate *are of a sedentary and light nature*" (emphasis added).

8. The court does not rule out the possibility that a plan administrator could reasonably find that two D.O.T. occupations within the same occupational group, and with the same Worker Function ratings, are so substantively similar as to be considered the same "regular occupation." However, that is not the case here.

9. The D.O.T. describes the primary "task elements" of Nurse, General Duty, as:

"Provides general nursing care to patients in hospital, nursing home, infirmary or similar health care facility: Administers prescribed medications and treatments in accordance with approved nursing techniques. Prepares equipment and aids physician during treatments and examinations of patients. Observes patient, records significant conditions and reactions, and notifies supervisor or physician of patient's condition and reaction to drugs, treatments, and significant incidents. Takes temperature, pulse, blood pressure, and other vital signs to detect deviations from normal and assess condition of patient."

Dionida is trained to perform those other duties.

Reliance's application of "regular occupation" is inconsistent with the plain language of the LTD Plan, and impermissibly collapses the LTD Plan's two-tier disability structure into one tier. See, *Saffle v. Sierra Pac. Power Co.*, 85 F.3d 455 (9th Cir.1996) (abuse of discretion to construe "regular occupation" as 'work available for which [the claimant] is qualified that would have enabled her to work with her feet elevated'). Thus, even if Reliance had discretion both to determine eligibility and construe the terms of the LTD Plan, its decision to deny Dionida's claim for benefits was an abuse of discretion.

### E. REMAND IS NOT WARRANTED

■ Remand to the plan administrator for further consideration is not warranted in this case. Although remand is available even on *de novo* review, usually it is not warranted where, as here, there is a fully developed record. See, *Quesinberry v. Life Insurance Company of North America*, 987 F.2d 1017, 1025 n. 6 (4th Cir.1993).

■ Nor is remand warranted under the abuse of discretion standard of review. A court that finds a plan administrator has abused its discretion may determine a claimant's eligibility for benefits if it finds that remand would be "useless formality" because the plan administrator "would necessarily have to grant the claim...." See, *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071–74 (2d Cir.1995); *Zuckerbrod v. Phoenix Mutual Life Insurance Co.*, 78 F.3d 46, 51 n. 4 (2d Cir.1996). Such is the case here. The difficulty is not that the administrative record was incomplete, but that the denial of benefits based on that record was erroneous as a matter of law.

Thus, under either standard of review, the court finds remand to the plan administrator is unwarranted.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion for Summary Judgment is DENIED and Plaintiff's Motion for Summary Judgment is GRANTED. Defendants shall reinstate Dionida's benefits retroactive to the date they were first terminated. The issue of attorneys fees shall be addressed by separate motion, in accordance with the factors set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir.1980), and the provisions of Local Rule 54–5.