Terry L. MIZZELL, Plaintiff,

v.

THE PAUL REVERE LIFE
INSURANCE COMPANY
et al., Defendants.

No. CV 98–6083–RAP.

United States District Court,
C.D. California.

July 20, 2000.

Scott A. Martin, John R. MacDowell, Steven S. Wang, Martin & Wilson, Santa Ana, CA, for Terry L. Mizzell.

Edwin A Oster, Robert K. Renner, Barger & Wolen, Irvine, CA, for Paul Revere Life Ins. Co., Provident Life and Acc. Ins. Co., Genex Service Inc., Kathleen Delahanty.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT IN PART

RICHARD A. PAEZ, Circuit Judge.

### I.

#### Introduction

Plaintiff Terry L. Mizzell ("Mizzell") has filed this ERISA action against defendant The Paul Revere Life Insurance Company ("Paul Revere") and others, seeking to recover long-term disability insurance benefits allegedly owed to him under a policy issued by defendant Paul Revere.[1] The Court previously granted defendant's motion for partial summary judgment holding that the applicable standard of review of its denial of benefits to plaintiff is abuse of discretion.[2] In finding that this was the applicable standard of review, the Court, relying on *Snow v. Standard Ins. Co.*, 87 F.3d 327, 333 (9th Cir.1996) *overruled on other grounds, Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir.1999)(en banc), also determined that the evidence reviewed by the Court in determining whether defendant abused its discretion, is confined to the administrative record before the plan administrator.

The Court has also denied plaintiff's motion for reconsideration based on a conflict of interest argument, holding that plaintiff failed to produce "material, probative evidence" of a conflict of interest. (April 13, 2000 Ct. Order at 2–3.)

Presently before the Court is defendant's motion for summary judgment. The Court must determine whether defendant abused its discretion in denying plaintiff long term disability benefits.

### II.

#### *Discussion*

#### A. Factual History

Plaintiff is a former employee of the company now known as Bates Advertising. Defendant Paul Revere issued a Group Long Term Disability Policy to plaintiff's employer for the benefit of eligible employees. As an eligible employee, plaintiff was a beneficiary of the plan. Plaintiff also purchased a supplemental benefit plan, under which he paid all relevant costs. Plaintiff suffered a heart attack on September 5, 1995, from which he suffered extensive permanent and incurable heart damage, known as ischemic cardiomyopathy. He went through a period of extensive rehabilitation in 1996. Plaintiff remained at Bates to assist in the location, selection, and training of his new replacement; however, plaintiff scaled back on his duties. Plaintiff's last day of work was February 28, 1997; on or about July 22, 1997, plaintiff submitted a claim for total disability benefits. In response, Paul Revere raised the issue of a pre-existing con-

1. Plaintiff's claim sought recovery of ERISA benefits or, alternatively, breach of insurance policy contract, bad faith breach of the insurance policy contract and conspiracy to fraudulently deny benefits. Plaintiff also sought reformation of the policy. On December 8, 1998, the Court granted partial summary judgment to defendant, finding that because ERISA governs plaintiff's policy, plaintiff's state law claims were preempted. Therefore, all that remains is plaintiff's ERISA claim for wrongful denial of benefits under 29 U.S.C. § 1132(a).

2. The Ninth Circuit has stated that the term abuse of discretion is synonymous with arbitrary and capricious. *See Atwood v. Newmont Gold Co., Inc.*, 45 F.3d 1317, 1321 n. 1 (9th Cir.1995).

dition and eventually denied plaintiff's claim.

Mizzell was first hospitalized for his heart condition on September 5, 1995. He returned to work in December of 1995, first on a reduced schedule, and later nearly full time. (Def's Mot. at 4, citing AR at 70, 72;[3] Pl's Opp. at 4.) Plaintiff argues that although he returned to work on a full-time basis he was unable to perform most of his important duties and delegated them to subordinates. (Pl's Opp. at 4; AR at 315, 319.) His medical records during this time repeatedly mentioned his plan to go on disability "early next year," i.e. early in 1997. (Def's Mot. at 4, citing AR at 85–87.) In the end of February 1997, Mizzell stopped working. Defendant claims there was no change in his medical condition necessitating that he stop working altogether. In fact, in his first medical record entry after leaving his job he informed his physician that he had "no problems" and the doctor found his "cardiac condition stable." (Def's Mot. at 4, citing AR at 86, 87.)

Plaintiff claims that he was unable to perform his job duties without having to rest frequently and delegate many of his previous responsibilities. (Pl's Opp. at 4.) Both of plaintiff's physicians agreed that it was appropriate for him to apply for disability benefits. (Mizzell Decl. at ¶ 2.) In the fall of 1996, Mizzell stated that he determined that he would be unable to continue working and informed his supervisors. They began looking for his replacement who was hired in November 1996 to begin work in January 1997. Mizzell remained through the end of February 1997 to train his successor. (Pl's Opp. at 4–5.)

As noted above, plaintiff submitted his claim for benefits in July 1997. (Pl's Opp. at 5; AR at 44–49.) On September 17, 1997 a nurse, Delahanty, retained by defendant, visited the plaintiff in his home in order to assess his case. In her report summarizing the plaintiff's claims, Delahanty stated that "in her nursing opinion

... Mr. Mizzell may do well to be reevaluated in six months for cardiac output improvement, as well as to explore vocational possibilities with him." (AR at 321)(The Delahanty report is found in the AR at 314–21.)

On September 23, 1997, Delahanty interviewed one of plaintiff's physicians, Dr. Kulick. Dr. Kulick informed the nurse that his patient's "physical limitations were too great to perform the tasks required as an advertising executive." (AR at 320.)

On September 29, 1997, claims examiner Julie Cole wrote to Mizzell and thanked him for meeting with Delahanty and informed him that defendant was awaiting "her completed report." (AR at 237.)

While Delahanty was writing her report, Cole referred the file to defendant's internal medical consultant for evaluation, Dr. Marvin Goldstein.

On October 15, 1997, Cole sent the first denial letter to plaintiff. The denial letter was written on the same day that Cole received Delahanty's September 27, 1997 Report by fax. (AR at 304–07.) The initial denial letter summarizes Dr. Goldstein's comments regarding plaintiff almost word for word. (AR at 299–301; 304–06.)

In the first denial letter, Cole explained in a letter to plaintiff that "in light of" the medical information listed above "it does not appear that there was any significant negative change in your cardiac status in or around the date you ceased working, February 28, 1997." The letter concluded that:

it is our opinion that your cardiac condition is not of sufficient severity to preclude you from performing the important duties of your occupation as a general manager. Therefore, based upon the medical documentation contained in our file, it has been determined that you do not meet the definition of total disability. Thus, there are no Long Term Disability benefits due

---

**3.** The Administrative Record ("AR") is attached to the Renner Decl. at Exh. A.

or payable under this Policy. (Def's Mot. at 5.)

In response to this letter, Paul Revere received a letter from plaintiff's treating physician, Dr. Fernandez on October 28, 1997, which it construed as an appeal. (AR at 332–34.) Fernandez opined that plaintiff's "overall cardiac condition remains extremely grave. His prognosis is extremely poor in the long term." (AR at 332.) Fernandez specifically stated that the fact that Mizzell was stable did not mean that he could return to work, it only meant that "there has been no significant change in his cardiac condition." (AR at 333.)

Based on this letter and the material already before it, Paul Revere issued its final denial on December 19, 1997, this time written by senior group claims examiner Julie Rowley. Rowley did not contact the treating physician Fernandez, but merely referred the file back to Dr. Goldstein, defendant's in-house physician, with directions to review the claim in light of Fernandez's comments. Dr. Goldstein did not change his opinion. (Def's Mot. at 5, citing AR at 360–363.) In this final denial, Paul Revere reiterated that although it acknowledged plaintiff's heart condition was not normal, there was no indication why he ceased working when he did. According to Paul Revere, plaintiff's medical records indicated that his condition was stable both immediately prior to and after plaintiff stopped working. Further, defendant noted that plaintiff had indicated to his doctors that he intended to apply for disability benefits at a specified time. (Def's Mot. at 6.)

The final denial also commented on the nature of plaintiff's job duties. In the letter defendant "assess[es] that the occupational duties of a general manager/vice-president are sedentary in nature and, therefore, would not require physical exertion." (Def's Mot. at 7; AR at 357.)

After receiving the final denial letter, plaintiff wrote claims administrator Julie Cole on January 6, 1998, and inquired into defendant's assessment of his occupational duties. (AR at 366–67.) Cole responded that:

> According to the Dictionary of Occupational Titles, which is based upon Department of Labor statistics, your occupation as a vice president/general manager is considered to be sedentary. Both positions require negotiating, coordinating and handling; these positions require complex decision making, multiple activity planning, coordinating, supervision, and staff management. These duties are not considered to be of a physical nature. *It should be noted that we insured you for a loss of income due to disability which prevented you from performing the duties of your occupation. We did not insure your inability to perform job duties specific to your place of employment.* (AR at 370.)(emphasis added).

In her letter, she also informed plaintiff that he had exhausted all of his administrative remedies. *Id.*

### B. Summary Judgment Standard

Because the Court has previously held that the applicable standard of review is abuse of discretion, the usual tests for summary judgment, such as whether a genuine dispute of material fact exists, do not apply. *See Bendixen v. Standard Insurance Co.,* 185 F.3d 939, 942 (9th Cir. 1999). In an ERISA case where abuse of discretion is the standard of review, "a motion for summary judgment is merely the conduit to bring the legal question before the district court." *Id.*

### C. Abuse of Discretion Review

The Supreme Court has held that under the abuse of discretion standard, the "interpretation will not be disturbed if reasonable." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). An administrator has abused its discretion if:

(1) the decision is rendered "without any explanation, ... [ (2) they] construe provisions of the plan in a way that clearly conflicts with the plain language of the plan," *Johnson v. Trustees of the Western Conference of Teamsters Pension Trust Fund,* 879 F.2d 651, 654 (9th Cir.1989), or (3) the administrator relied on "clearly erroneous findings of fact in making benefit determinations." *Taft v. Equitable Life Assur. Soc'y,* 9 F.3d 1469, 1473 (9th Cir. 1991). Here, Paul Revere has abused its discretion in interpreting plan provisions in a manner that conflicts with the plain language of the plan.

The decision will be affirmed, as long as there is "substantial evidence to support the decision" i.e. that there is "relevant evidence [that] reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Snow,* 87 F.3d at 332. "[E]ven decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion." *Taft,* 9 F.3d at 1473.

■ The only information the Court may consider in determining whether the defendant abused its discretion is the information that was in fact before the plan administrator, the Administrative Record. *See Snow,* 87 F.3d at 332. If the Court were to consider information beyond the administrative record, such as the declarations submitted by plaintiff, it would be reversible error. *Id.* at 332. For this reason, the Court must disregard the myriad of declarations filed by both plaintiff and defendant as beyond the scope of the Court's review.

### 1. *Plain Language of the Plan*

Plaintiff argues that defendant acted in a manner that conflicted with the plain language of the policy on two occasions. First, in interpreting the term total disability. Second, in failing to conduct a "full and fair review" of the initial denial of benefits.

An administrator abuses its discretion if it construes provisions of the plan in a way that "conflicts with the plain language of the plan." *Taft,* 9 F.3d at 1472. The Court must look beyond determining "whose interpretation of the plan documents is most persuasive" and determine whether the "administrator's interpretation is unreasonable." *Winters v. Costco Wholesale Corp.,* 49 F.3d 550, 553 (9th Cir.1995).

### a. Total Disability

■ The policy defined "totally disabled" as "unable to perform the important duties of his own occupation on a full-time or part-time basis because of an Injury or Sickness that started while insured under this Policy." (Def's Mot. at 13, Exh. A, at 25.)

Plaintiff argues that defendant misconstrued the definition of total disability in denying benefits. The parties disagree on how the policy defines total disability. Defendant argues that plaintiff is not disabled from his general occupation as a Vice President/General Manager. Defendant utilized the definition of plaintiff's occupation of Vice President/General Manager as provided by the Department of Labor, and determined that his position was a sedentary one. Plaintiff argues that he is disabled from performing his former job duties at Bates, which were clearly not sedentary in that he was often required to travel up to two days a week for his job.[4] The essential dispute can be framed as whether plaintiff needs to be disabled from

---

4. In plaintiff's Statement of Disability Benefits plaintiff states that his occupation is "Advertising" and details his job duties as: active monitoring and management of client/agency relationships, attending local and out of town functions, constant review and discussion of all projects, review and management of all data and reports in the areas of profit and loss, and recruiting. Plaintiff states that the client meetings "require a high level of energy and stamina." (AR at 48.)

his "general occupation" or from his actual job or "own occupation."

The Southern District of New York has determined that a middle ground should apply in cases where the language is similar to that used in the Paul Revere policy. In *Kinstler v. First Reliance Standard Life Ins. Co.*, 1997 WL 401813 (S.D.N.Y. 1997), the insurance company determined that plaintiff's position as director of nursing was sedentary by relying on the Department of Labor definition. In fact, up to 25% of plaintiff's duties required direct patient care and could not be described as sedentary. *Id.* at 4.

The policy at issue in *Kinstler* defined total disability as when the insured "cannot perform the material duties of his or her regular occupation." The policy here states that an insured is totally disabled if he is "unable to perform the important duties of his own occupation on a full-time or part-time basis...." (Def's Mem., Exh. A at 25.) In *Kinstler* the operative phrase was "regular occupation" while the current policy refers to "own occupation." If anything, the phrase "regular" seems more general in nature than "own." Citing another Southern District Court decision, the *Kinstler* court stated that the term "regular occupation" should be construed to mean "a position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties." *Id.* at 7, *citing Dawes v. First Unum Life Ins.*, 851 F.Supp. 118, 122 (S.D.N.Y.1994).

Declaring this interpretation to be a "sensible middle course" between the parties' divergent definitions, the *Kinstler* court determined that simple application of the Department of Labor definition of a job title was improper.[5] *Id.* at 8. Utilizing the general definition of a job title "ignored the 'skills and training' and 'comparable duties' required by the plaintiff's [specific] job." *Id.*

The same course was adopted by a Northern District of California court in *Dionida v. Reliance Standard Life Ins. Co.*, 50 F.Supp.2d 934 (N.D.Cal.1999). The insurance company in *Dionida* denied the plaintiff disability benefits on the basis that while she was disabled from her occupation as a duty nurse she was qualified for several positions as a registered nurse that she was physically able to perform. In short, the insurance company found her not to be disabled from performing other nursing occupations. *Id.* at 937–38. The court held that under either a de novo or abuse of discretion standard of review, the insurance company violated the plain meaning of the policy when it determined that the plaintiff was not disabled. The policy at issue also employed the term "regular occupation." The court held that the plaintiff's regular occupation was not simply a registered nurse but a general duty nurse. *Id.* at 939. In reaching this conclusion the court adopted the definition of "regular occupation" employed by the Southern District of New York in *Dawes v. First Unum Life Insurance Co.*, 851 F.Supp. 118 (S.D.N.Y.1994). *Id.*

Similarly, Judge Feess of the Central District of California in *Rosenthal v. The Long–Term Disability of Epstein, Becker & Green, P.C.*, CV–98–4246 (unpublished), held that Paul Revere had interpreted the same provision at issue here in violation of the plain language of the plan. In *Rosenthal,* Paul Revere determined that a trial attorney was not disabled because she could work full time at eight hours a day/forty hours a week. Judge Feess determined that because trial attorneys cannot regulate their responsibilities to only work such limited hours, Paul Revere had effectively read the notion of "own occupation" out of the plan language. (Martin Decl. to Motion for Recon., Exh. A at 17.)

Judge Feess relied in part on the Ninth Circuit's analysis in *Saffle v. Sierra Pac.*

5. Even though the *Kinstler* court was reviewing the decision of the insurance company de novo, the import of its determination that Department of Labor job definitions are limited in their relation to "own occupation" disability evaluations is still applicable.

*Power Co. Bargaining Unit Long Term Disability Income Plan,* 85 F.3d 455 (9th Cir.1996). In *Saffle,* the defendant determined that the plaintiff was not totally disabled because her employer could accommodate her in another position where she could work with her feet elevated. *Id.* at 457. The defendant determined that because she could perform a substantial portion of her previous job with accommodation from her employer the plaintiff was not entitled to disability benefits. *Id.* at 457–58. The Ninth Circuit held that interpreting the plan to find that the plaintiff was not disabled because she could work with certain accommodation was inconsistent with the plain language of the plan. *Id.* at 459.

Defendant challenges plaintiff's argument that its definition of total disability was contrary to the plain language of the plan by pointing to another portion of the policy that states:

> An Employee's Disability is determined relative to his ability or inability to work. It is not determined by the availability of a suitable position with his employer. (Def's Mem., Exh. A, Bate stamp PRL 000413.)

This does not change the above analysis. This language does not relate to whether "own occupation" means one's job or one's occupation, it means only that if an employer eliminates a particular job it does not affect the determination of whether an employee is disabled.

In utilizing the Department of Labor's definition of plaintiff's occupation of Vice President/General Manager, to determine that plaintiff's position was sedentary, rather than examining plaintiff's actual job duties, Paul Revere acted contrary to the plain language of the plan and abused its discretion.

**b. Full and Fair Review**

Plaintiff argues that defendant failed to afford him a full and fair review as required by both the policy and ERISA.[6]

 The Code of Federal Regulations sets out the minimum requirements for employee benefit plan procedures for administrative review of a denial of benefits. 29 C.F.R. § 2560.503–1(a). Under this regulation, a plan is required to provide "a claimant or his duly authorized representative [with] a reasonable opportunity to appeal a denied claim." 29 C.F.R. 2560.503–1(g). The claimant or his representative is to have an opportunity to "review pertinent documents [and] submit issues and comments in writing." *Id.* The regulation is specific in that only the claimant or his authorized representative may appeal the decision. *Id.* Here, where Mizzell had not designated Dr. Fernandez as his authorized representative, it was inappropriate to construe Dr. Fernandez's letter as an appeal.

Under the plan, plaintiff had 90 days from the initial denial (until January 13, 1998) to pursue a formal administrative appeal. Fernandez's letter was dated 13 days after the initial denial, i.e. on October 28, 1997. Plaintiff argues that the defendant unilaterally chose to interpret the letter as an appeal and then engaged in a "sham" review of the initial decision. (Pl's Supp. Opp. at 9.) As evidence of this sham review, plaintiff points to the fact that the same typographical errors appeared in the second denial letter that were present in the first, i.e. referring to Saddleback as Saddlebrook and referring to a Dr. More as Mel More instead of Gary More. (Pl's Supp. Opp. at 13.)

The claims representative assigned to process the appeal never contacted the treating physicians, the plaintiff, or anyone at his place of employment. (Pl's Supp. Opp. at 9–10.)

---

**6.** The plan's requirement of a full and fair review is simply a restatement of ERISA's statutory requirement. As such, case law and regulations interpreting ERISA's full and fair review requirement are relevant.

There are few cases directly addressing the legitimacy of an ERISA appellate plan process. However, in one case, an Eastern District of Missouri court determined that a plan had provided adequate appellate process. In that case, while the plan did consider a letter from a physician as a request for reconsideration it did not construe it as an appeal. *See Birdsell v. United Parcel Serv. of America,* 903 F.Supp. 1338, 1344 (E.D.Mo.1995) *aff'd* 94 F.3d 1130, 1133 (8th Cir.1996). In the end, the plan reconsidered its decision on six occasions, pursuant to letters from the participant's doctor. This was all prior to conducting a formal review. *Id.* at 1349. Plaintiff challenged the plan's decision, in part, arguing that the plan did not provide a "full and fair review" because the plan administrator based the appeal on materials already submitted. Even after it conducted the final review, the plan invited the participant to submit any additional information that he believed should be considered. *Id.* at 1350. In short, the appeal spanned two and a half years and provided the plaintiff with a thorough administrative review process. In the present case, although plaintiff sought to pursue an appeal with the assistance of counsel, the defendant's treatment of Dr. Fernandez's letter foreclosed any opportunity for further review.

Defendant argues that construing Fernandez's letter as an appeal benefitted plaintiff, because it kept his claim open. (Def's Supp. Reply at 18.) This argument is without merit as the letter was received 13 days after the initial denial and the 90 day appeal period had barely begun.

On November 24, 1997, defendant wrote to plaintiff and informed him that they were construing Dr. Fernandez's letter as an appeal. This letter offered him the opportunity to submit additional information. (AR at 337.) Despite this offer, plaintiff's failure to respond promptly cannot be construed as plaintiff's authorization to treat Dr. Fernandez's letter as an appeal. Whether a plan participant in plaintiff's position would have understood the significance of Paul Revere's offer is debatable. Dr. Fernandez's letter, even when coupled with plaintiff's silence, is not the equivalent of a formal appeal by plaintiff or his designated representative.

On December 3, 1997, Mizzell sent a letter authorizing his attorney to act on his behalf. (AR at 352.) On December 19, 1997, Paul Revere issued its final denial letter. (AR at 355.) On January 6, 1998, Mizzell wrote to Rowley contesting the decision. (AR at 365.) On February 16, defendant again wrote to Mizzell and informed him that he had exhausted his administrative remedies. (AR at 370.) Mizzell's January 6, 1998 letter was within the 90 day appeal period. This letter should have been construed as an appeal under the terms of the plan and 29 C.F.R. § 2560.503–1(a) as it is the only document from Mizzell or his authorized legal representative formally requesting a review of the initial decision.

In construing Dr. Fernandez's letter as an appeal, Paul Revere denied Mizzell a full and fair review as guaranteed by the plain language of the plan and 29 C.F.R. § 2560.503–1(a). As such, defendant abused its discretion in denying plaintiff benefits.

**D. Remedies**

Given the above resolution of the issues raised by the parties, the Court remands this case to the plan administrator for further consideration consistent with this opinion. *See White v. Jacobs Eng'g Group Long Term Disability Benefit Plan,* 896 F.2d 344, 352 (9th Cir.1989)(remanding to disability plan's appeals board after finding that plan administrator had provided inadequate notice of the reasons for denying plaintiff's claim). The record before the Court is inadequate to conclude that there is no possible evidence that could support a denial of benefits. *See Miller v. United Welfare Fund,* 72 F.3d 1066, 1074 (2d Cir. 1995).

**1024**

### III.

#### *Conclusion*

For the reasons given above, the defendant abused its discretion by acting in a manner that conflicted with the plain language of the policy both in its interpretation of the term total disability and in failing to conduct a "full and fair review" on appeal. Defendant's motion for summary judgment is therefore **DENIED** and plaintiff's motion for summary judgment is **GRANTED IN PART.** The Court **REMANDS** this matter to the plan administrator for a determination consistent with this order. The Court finds that plaintiff's pending motion for an order appointing an expert medical advisor is moot.

**IT IS SO ORDERED.**